■ PLLUM TONAJ et al., Respondents, v ABC CARPET CO., INC., et al., Appellants. (And a Third-Party Action.) [841 NYS2d 482]—

Judgment, Supreme Court, Bronx County (George D. Salerno, J.), entered August 25, 2006, which, inter alia, awarded plaintiff Pllum Tonaj $2.5 million for past pain and suffering and $5 million for future pain and suffering, and awarded plaintiff Dede Ndou $2.5 million for past pain and suffering and $100,000 for past medical expenses, and which brings up for review an order of the same court (Bertram Katz, J.), entered April 13, 2001, which granted plaintiffs' motion for partial summary judgment on the issue of liability, and which also brings up for review an order of the same court (George D. Salerno, J.), entered April 13, 2006, which denied defendants' motion to preclude the testimony of Tonaj's treating neurologist, unanimously reversed, on the law, without costs, to deny plaintiffs summary judgment on the issue of liability and remand for a trial on that issue, and, on the facts, to vacate the award to Tonaj of past and future

pain and suffering, and to Ndou for past pain and suffering and past medical expenses, and remand for a new trial on those damages, unless plaintiffs stipulate, within 30 days of service of a copy of this order with notice of entry, to reduce the monetary awards as indicated infra.

Defendants ABC Carpet Co., Inc. (ABC) and 1055 Bronx River Avenue Partners, L.P., as owners, hired third-party defendant Eurolighting Inc. to paint a warehouse. On July 16, 1998, plaintiffs, employees of Eurolighting, were directed to scrape and prepare the ceiling and sprinkler pipes in the basement for painting. It is uncontested that scaffolds of both ABC and Eurolighting were present in the basement. However, there was conflicting testimony as to whether (1) the scaffolds were interchangeable or the Eurolighting scaffolds were wider and safer, (2) Paul Chapman, ABC's president, instructed plaintiffs not to use ABC's scaffolds, (3) Michael Gertsch, Eurolighting's principal, instructed plaintiffs on the day of the accident to use only his scaffolds and not ABC's, and (4) plaintiffs moved the scaffold by pulling along the rafters, rather than by getting off it, pushing it, and climbing back on, as they had been instructed. Those conflicting versions of the facts raise issues as to whether adequate safety devices were available and as to whether plaintiffs failed to use them or misused them (*see Robinson v East Med. Ctr., LP*, 6 NY3d 550, 554-555 [2006]), or disregarded specific safety instructions (*see Cahill v Triborough Bridge & Tunnel Auth.*, 4 NY3d 35, 39-40 [2004]).

Should plaintiffs prevail at trial on the issue of liability, a new trial would also be required with respect to damages for past and future pain and suffering as to Tonaj, and past pain and suffering and past medical expenses as to Ndou, unless, within 30 days of service of a copy of this order with notice of entry, plaintiffs stipulate to accept a reduced award, as indicated herein.

As a result of his 15-foot fall from the scaffold, Tonaj lost consciousness, broke six teeth, and fractured his left elbow and right wrist. He underwent two operations on his elbow, one on his shoulder, and one on his back, and went to physical therapy three times per week from October 1998 until the summer of 2001. He will require an additional surgery and physical therapy for his elbow, and may need a spinal operation. Nerve injury in his neck and left arm causes pain, numbness, and diminished dexterity. He also has cervical discogenic disease, post-traumatic arthritis, a pinched nerve in his back, and a herniated disk. He has suffered at least four seizures, for which he will have to take medication for the rest of his life and see a neurologist four

to six times per year. Tonaj testified that he still feels pain in his elbow, wrist and back, continues to take pain medication, has difficulty sleeping, cannot stand or sit for extended periods of time, can no longer dance, and is unable to return to construction work because his medication makes him drowsy. A surveillance video of September 2002 shows Tonaj jogging across the street, bending over, holding a tray with three to four cups of coffee in his left hand, and getting into a car.

Supreme Court properly denied defendants' motion, based on CPLR 3121 and 22 NYCRR 202.17, to preclude the opinion testimony of Tonaj's treating neurologist causally linking the seizures to the accident, since both provisions are inapplicable. We further note that defendants thoroughly cross-examined the neurologist and presented their own well-credentialed expert. However, we find that the jury's award of $2.5 million for past pain and suffering, for six years and nine months, deviates materially from what would be reasonable compensation, and therefore it should be reduced to $2 million (CPLR 5501 [c]; *see Kraus v Caliche Realty Estates*, 302 AD2d 214 [2003], *lv denied* 100 NY2d 503 [2003]; *Bermeo v Atakent*, 241 AD2d 235, 240 [1998]). The jury award of $5 million for 20 years of future pain and suffering should be reduced to $2 million (*see Lewis v Port Auth. of N.Y. & N.J.*, 8 AD3d 205 [2004]; *Ernish v City of New York*, 2 AD3d 256 [2003]).

Ndou remained in the hospital for two days after the accident. He suffered herniated disks, vertebral bulging and compression, nerve impingement of the right leg and shoulder, and ulnar neuropathy causing tingling and numbness in two fingers of his left hand. He stayed at home for two months because of the pain, and thereafter went to physical therapy three times per week until January 1999, which he resumed in 2001. He underwent surgery for one of his herniated disks and later for his shoulder. He had to use crutches for about 1½ months and a cane for three years. He has permanent pain and restricted use of his shoulder. He also suffers from post-traumatic migraine headaches, and his vision becomes blurry if he tries to read more than two or three pages, although he is able to drive. He may require surgery on his left elbow.

The jury's award of $2.5 million for past pain and suffering, for six years and nine months, deviates materially from what would be reasonable compensation, and therefore should be reduced to $500,000 (*see Lewis, supra*). The award of $100,000 for past medical expenses should be reduced to $56,975, the amount argued by Ndou on summation and the maximum amount warranted by the hospital bills, doctor visits, and phys-

ical therapy sessions. Concur—Saxe, J.P., Friedman, Williams, Buckley and Kavanagh, JJ.