■ HUGH GALLAGHER et al., Appellants-Appellants, v THE NEW YORK POST et al., Respondents-Respondents. NYP HOLDINGS, INC., Third-Party Plaintiff-Respondent-Appellant, v FRANCIS A. LEE Co., Third-Party Defendant-Appellant-Respondent. [866 NYS2d 178]—

Order, Supreme Court, New York County (Walter B. Tolub, J.), entered August 17, 2007, which, insofar as appealed from as limited by the briefs, upon reargument, adhered to its prior order denying plaintiffs' motion for summary judgment on the issue of liability on their Labor Law § 240 (1) cause of action, and vacated its determination granting so much of the cross motion of defendants the New York Post and NYP Holdings, Inc. (collectively NYP) for summary judgment dismissing plaintiffs' Labor Law § 200 claim and reinstated the claim, and which denied the motion of third-party plaintiffs NYP for summary judgment on the first cause of action in the third-party complaint for conditional contractual indemnification against third-party defendant Francis A. Lee Co. (Lee), and which denied Lee's motion to sever the third-party action and its cross motion for summary judgment dismissing the third-party complaint, and which granted NYP and Lee's motions to strike the note of issue filed by plaintiffs, modified, on the law, NYP's cross motion for summary judgment granted to the extent of dismissing plaintiffs' claim pursuant to Labor Law § 200, NYP's motion for summary judgment granted on its first cause of ac-

tion in the third-party complaint for conditional contractual indemnification, and Lee's cross motion for summary judgment granted to the extent of dismissing the second cause of action in the third-party complaint for breach of the contract to procure insurance, and otherwise affirmed, without costs. Appeal from order, same court and Justice, entered January 10, 2007, dismissed, without costs, as superseded by the appeal from the subsequent order.

Initially, we find that the motion court properly denied plaintiffs' motion for summary judgment on the Labor Law § 240 (1) cause of action, albeit for the reasons it initially adopted, and then rejected, on reargument. Labor Law § 240 (1), commonly referred to as the Scaffold Law, provides, in pertinent part, that: "All contractors and owners and their agents . . . in the erection, demolition, repairing, altering, painting, cleaning or pointing of a building or structure shall furnish or erect, or cause to be furnished or erected for the performance of such labor, scaffolding, hoists, stays, ladders, slings, hangers, blocks, pulleys, braces, irons, ropes, and other devices which shall be so constructed, placed and operated as to give proper protection to a person so employed."

The Court of Appeals has long and repeatedly observed that the purpose of the statute is to protect workers by placing the ultimate responsibility for safety practices where such responsibility belongs, on the owners and general contractors, instead of on the individual workers who are not in a position to protect themselves (*Martinez v City of New York*, 93 NY2d 322, 325-326 [1999]; *Zimmer v Chemung County Performing Arts*, 65 NY2d 513, 520 [1985]; *Koenig v Patrick Constr. Corp.*, 298 NY 313, 318 [1948]). Consistent with this objective, the Court of Appeals has stated that the statute is to be construed as liberally as necessary to accomplish the purpose for which it was framed (*Panek v County of Albany*, 99 NY2d 452, 457 [2003]; *Gordon v Eastern Ry. Supply*, 82 NY2d 555, 559 [1993]), but has also cautioned that not every worker who falls at a construction site, nor every object that falls on a worker, gives rise to an award of damages under Labor Law § 240 (1) (*Abbatiello v Lancaster Studio Assoc.*, 3 NY3d 46, 50 [2004]; *Blake v Neighborhood Hous. Servs. of N.Y. City*, 1 NY3d 280, 288 [2003]). Accordingly, it is still necessary for a plaintiff to demonstrate that the statute was violated, and that the violation proximately caused his/her injuries (*Cahill v Triborough Bridge & Tunnel Auth.*, 4 NY3d 35, 39 [2004]; *Quattrocchi v F.J. Sciame Constr. Corp.*, 44 AD3d 377, 381 [2007], *affd* 11 NY3d 757 [2008]). Thus, where a plaintiff's own actions are the sole proximate cause of the accident, liability

under Labor Law § 240 (1) does not attach (*Robinson v East Med. Ctr., LP*, 6 NY3d 550, 554 [2006]; *Cahill v Triborough Bridge & Tunnel Auth.*, 4 NY3d at 39). Moreover, if adequate safety devices are made available to the worker, but the worker does not use, or misuses, them, there is no liability (*Robinson*, 6 NY3d at 554-555; *Tonaj v ABC Carpet Co., Inc.*, 43 AD3d 337, 338 [2007]), and "[t]he burden of showing that an elevation-related risk exists, and that the owner or contractor did not provide adequate safety devices falls upon the plaintiff" (*Broggy v Rockefeller Group, Inc.*, 8 NY3d 675, 681 [2007]).

In this matter, we are compelled to disagree with the dissent's conclusion that "there is simply no evidence of record that the plaintiff chose not to use an available safety device." Jonathan Schreck, plaintiff's employer's assistant project manager, testified at a deposition conducted on January 31, 2006, that: he had weekly meetings with the safety specialist hired to oversee the construction project in question; the ironworkers were required to use certain safety devices, such as lanyards, cables or harnesses, when working near open areas; the devices were used to prevent injury in case a worker fell through an opening or off an elevated surface; the safety devices were available on the job site the day plaintiff was injured; and a standing order was in place that all workers operating around any opening in the floor were to be in a harness and tied off.

In our view, the foregoing testimony, which directly contradicts that of plaintiff, his coworker, and the project foreman, consists of more than "[m]ere generic statements of the availability of safety devices"* and is sufficient, at this juncture, to raise issues of fact as to whether plaintiff was provided with adequate safety devices, was instructed to use them, and declined to do so, rendering his actions, or lack thereof, the sole proximate cause of his injuries. We are not convinced, however, that even if plaintiff's grip was not up to full strength as a result of a prior unrelated injury, that such weakness could be considered the sole proximate cause of the accident.

The court erred in reinstating the Labor Law § 200 claim, where the evidence establishes that NYP did not exercise the requisite degree of control over plaintiff's work that would give rise to liability (*see Buckley v Columbia Grammar & Preparatory*, 44 AD3d 263, 272 [2007], *lv denied* 10 NY3d 710 [2008]). That NYP retained a project manager for day-to-day monitoring

---

* Indeed, Mr. Schreck testified, in a manner indicating a good deal of familiarity with the safety devices, as to the various types of safety harnesses that were made available to the ironworkers, as well as the details of their operation, rendering his testimony somewhat more than generic statements.

of the project does not warrant a different conclusion (see *Aragon v 233 W. 21st St.*, 201 AD2d 353, 354 [1994]).

NYP was entitled to summary judgment on the first cause of action in the third-party complaint for conditional contractual indemnification, since any negligence giving rise to the accident, i.e., the purported failure to provide safety harnesses, arises out of the work performed by plaintiff's employer, Lee. Moreover, contrary to Lee's position, the antisubrogation rule is only applicable to bar claims for indemnification to the extent of the limits of a common policy (see *Federated Dept. Stores, Inc. v Twin City Fire Ins. Co.*, 28 AD3d 32, 40 [2006]). By virtue of the "other insurance" language of the umbrella policy obtained by Lee, the primary policy obtained by NYP is not a common policy, since Lee is not an insured under that policy. Thus, NYP's primary policy would attach prior to the umbrella policy, and accordingly, it is entitled to contractual indemnification for any damages awarded in excess of $1,000,000 and below $3,000,000.

The evidence further establishes that Lee did obtain the requisite insurance under its contract with NYP and thus, the second cause of action in the third-party complaint for failure to procure insurance should have been dismissed.

Inasmuch as this determination disposes of liability issues with regard to the third-party action, it does not appear that there should be any outstanding discovery. Any discovery regarding damages has presumably been shared between the parties to the third-party action, who are being provided a defense by the same carrier. Therefore, unless Lee can establish a need for further discovery, discovery should be closed, and severance of the third-party action is unnecessary. Concur—Tom, J.P., Friedman and Nardelli, JJ.

Catterson and Moskowitz, JJ., dissent in part in a memorandum by Catterson, J., as follows: The plaintiffs' motion for summary judgment on the Labor Law § 240 (1) cause of action should have been granted, since there are no triable issues regarding whether the requisite safety equipment was made available, and, if so, whether the injured plaintiff chose not to make use of it. (See *Montgomery v Federal Express Corp.*, 4 NY3d 805, 806 [2005].) It is uncontested that while the plaintiff was cutting through steel decking with a gas-powered circular cut-off saw, the saw became bound up in the decking. At that point, the moment of inertia of the saw relative to the captured saw blade caused the plaintiff to be thrown a distance of approximately 14 feet into an opening in the floor whereupon he was injured. He testified that he was not provided with any safety devices. This was corroborated by the affidavit of the

plaintiff's coworker, the testimony of the plaintiff's own foreman, and the employee sign-in sheet. The plaintiff made out a prima facie case that he was not supplied with safety devices adequate to prevent him from being propelled into an open hole.* The burden then shifts to the defendant to establish that, "there was no statutory violation and that plaintiff's own acts and omissions were the sole cause of the accident." (*Blake v Neighborhood Hous. Servs. of N.Y. City*, 1 NY3d 280, 289 n 8 [2003].)

We once again must observe that this is not merely a negligence action, that the Labor Law and decisional authority impose a greater burden on the defendants, and that public policy protecting workers requires that the statutes in question be construed liberally to afford the appropriate protections to the worker.

Thus, to defeat summary judgment in this case based on violations of the Labor Law, the defendant would necessarily have to establish that the plaintiff "had adequate safety devices available; that he knew both that they were available and that he was expected to use them; that he chose for no good reason not to do so; and that had he not made that choice he would not have been injured." (*Cahill v Triborough Bridge & Tunnel Auth.*, 4 NY3d 35, 40 [2004].) The record fails to establish that there is an issue of material fact on several of the *Cahill* sole proximate cause factors.

Primarily, there is simply no evidence of record that the plaintiff chose not to use an available safety device. Indeed, every witness except Francis A. Lee Co.'s assistant project manager, Jonathan J. Schreck, testified that no safety devices were provided to the ironworkers. At no point does Schreck specifically state that the plaintiff was told to use certain safety devices and that he declined and that he had "no good reason not to do so." Furthermore, the defendants point to no evidence of record that like the plaintiffs in *Cahill* and *Blake*, the plaintiff explicitly refused to use the available safety devices. (*See Quattrocchi v F.J. Sciame Constr. Corp.*, 44 AD3d 377, 381-382 [1st Dept 2007], *affd* 11 NY3d 757 [2008].) Indeed, Schreck testified that the plaintiff's foreman was the best person to ask about the ironworkers' use of safety devices. The foreman stated that no such devices were provided to the plaintiff. Mere generic statements of the availability of safety devices are insufficient to create an issue of fact that the plaintiff was the sole proximate cause of his injury.

---

* It is noted, as the majority points out, that even if the plaintiff's grip was not up to full strength as a result of a prior unrelated injury, such weakness could not be considered the sole proximate cause of the accident.