[803 NE2d 757, 771 NYS2d 484]

Rupert Blake et al., Appellants, v Neighborhood Housing Services of New York City, Inc., Respondent.

Argued November 19, 2003; decided December 23, 2003

## POINTS OF COUNSEL

*Kelner & Kelner,* New York City (*Gail S. Kelner* of counsel), for appellants. I. Sole proximate cause is not a defense to the imposition of liability under Labor Law § 240 (1) arising out of defendant's violation of its statutory obligation to properly place and secure the ladder. (*Weininger v Hagedorn & Co.,* 91 NY2d 958; *Carlos v W.H.P. 19,* 280 AD2d 419; *Kijak v 330 Madison Ave. Corp.,* 251 AD2d 152; *McMahon v 42nd St. Dev. Project,* 188 Misc 2d 25; *Secord v Willow Ridge Stables,* 179 Misc 2d 366; *Bland v Manocherian,* 66 NY2d 452; *MacNair v Salamon,* 199 AD2d 170; *Rocovich v Consolidated Edison Co.,* 78 NY2d 509; *Quigley v Thatcher,* 207 NY 66; *Gordon v Eastern Ry. Supply,* 82 NY2d 555.) II. Defendant failed to fulfill its statutory obligation under Labor Law § 240 (1). (*Brown v Sagamore Hotel,* 184 AD2d 47; *Hauff v CLXXXII Via Magna Corp.,* 118 AD2d 485; *Gordon v Eastern Ry. Supply,* 82 NY2d 555; *Guillory v Nautilus Real Estate,* 208 AD2d 336; *Acosta v Bentley Apts.,* 298 AD2d 124; *Rocovich v Consolidated Edison Co.,* 78 NY2d 509; *Ross v Curtis-Palmer Hydro-Elec. Co.,* 81 NY2d 494; *Franklin v Dormitory Auth.,* 291 AD2d 854; *Lacey v Turner Constr. Co.,* 275 AD2d 734; *Cordero v Kaiser Org.,* 288 AD2d 424.) III. Comparative negligence is not a defense to absolute liability under Labor Law § 240 (1). (*Stolt v General Foods Corp.,* 81 NY2d 918; *Hagins v State of New York,* 81 NY2d 921; *Gordon v Eastern Ry. Supply,* 82 NY2d 555; *Bland v Manocherian,* 66 NY2d 452; *Panek v County of Albany,* 99 NY2d 452.)

*Carol R. Finocchio,* New York City, *Lisa M. Comeau* and *Law Office of Patrick Colligan* for respondent. I. Plaintiffs' motion for a directed verdict was properly denied, and plaintiffs were not entitled to judgment as a matter of law merely because the top portion of the extension ladder retracted. As such, the issues of proper protection and proximate cause were for the jury, which, given the evidence before it, was entitled to resolve the issue in Neighborhood Housing Services of New York City's favor. (*Blum v Fresh Grown Preserve Corp.,* 292 NY 241; *Cross v Finch Pruyn & Co.,* 281 AD2d 836; *Amo v Little Rapids Corp.,* 268 AD2d 712; *Landry v Di Sarro Constr. Co.,* 149 AD2d 859.) II. Alternatively, the judgment should be affirmed because

plaintiffs' proof was legally insufficient to establish that Neighborhood Housing Services of New York City was the agent for the owner. (*Matter of Delta Air Lines v New York State Div. of Human Rights,* 90 NY2d 882; *Parochial Bus Sys. v Board of Educ. of City of N.Y.,* 60 NY2d 539; *Russin v Picciano & Son,* 54 NY2d 311; *Campanella v St. Luke's Roosevelt Hosp.,* 247 AD2d 294; *Kerr v Rochester Gas & Elec. Corp.,* 113 AD2d 412; *Kwoksze Wong v New York Times Co.,* 297 AD2d 544; *Musselman v Gaetano Constr. Corp.,* 285 AD2d 868; *Everitt v Nozkowski,* 285 AD2d 442; *Serpe v Eyris Prods.,* 243 AD2d 375; *Sikorski v Springbrook Fire Dist.,* 225 AD2d 1041.)

*Andrew Zajac,* Jericho, *Michael J. Caulfield, Dawn C. DeSimone, Elizabeth Anne Bannon* and *Kathleen D. Foley* for Defense Association of New York City, Inc., amicus curiae. I. Plaintiff is not entitled to have the affirmed findings set aside and judgment as a matter of law entered in his favor. (*Narducci v Manhasset Bay Assoc.,* 96 NY2d 259; *Smith v Hooker Chems. & Plastics Corp.,* 89 AD2d 361; *Brown v Christopher St. Owners Corp.,* 87 NY2d 938; *Smith v Shell Oil Co.,* 85 NY2d 1000; *Abbatiello v Lancaster Studio Assoc.,* 307 AD2d 788; *Rogala v Van Bourgondien,* 263 AD2d 535; *Rocovich v Consolidated Edison Co.,* 78 NY2d 509; *Jastrzebski v North Shore School Dist.,* 223 AD2d 677, 88 NY2d 946; *Mayancela v Almat Realty Dev.,* 303 AD2d 207; *Lozada v State of New York,* 267 AD2d 215.) II. Neighborhood Housing Services of New York City is not liable because there was no proof that it acted as an agent for the owner of the premises, nor did it control the means and methods of plaintiff's work. (*Russin v Picciano & Son,* 54 NY2d 311; *Sikorski v Springbrook Fire Dist.,* 225 AD2d 1041.)

*Sullivan Papain Block McGrath & Cannavo,* New York City (*Brian J. Shoot* of counsel), and *Nancy Kramer* for New York State Trial Lawyers Association, amicus curiae. Where a statutorily listed device caused injury because it had *not* been "constructed, placed and operated as to give proper protection," the violation of Labor Law § 240 (1) cannot be excused simply because it was *plaintiff* who negligently chose, placed, or set up the device in issue. (*Weininger v Hagedorn & Co.,* 91 NY2d 958; *Gordon v Eastern Ry. Supply,* 82 NY2d 555; *Panek v County of Albany,* 99 NY2d 452; *Rocovich v Consolidated Edison Co.,* 78 NY2d 509; *Zimmer v Chemung Performing Arts,* 65 NY2d 513; *Haimes v New York Tel. Co.,* 46 NY2d 132; *Bland v Manocherian,* 66 NY2d 452; *Klein v City of New York,* 89 NY2d 833; *Corrado v Allied Bldrs.,* 186 Misc 2d 780; *Secord v Willow Ridge Stables,* 179 Misc 2d 366.)

**OPINION OF THE COURT**

ROSENBLATT, J.

We are presented with the question whether a plaintiff who was injured while using a ladder may prevail in a Labor Law § 240 (1) action even when a jury finds that the ladder was so constructed and operated as to give him proper protection and he was the sole cause of his injury. In deciding the appeal, it is necessary for us to address the concept of strict (or absolute) liability and the predicates for its application under Labor Law § 240 (1).

At the time of the injury, plaintiff operated his own contracting company, and was working alone on a renovation job at a two-family house in the Bronx. Defendant Neighborhood Housing Services of New York City (NHS), a not-for-profit lender, provided low-interest financing to facilitate the project. Acting on the homeowner's application, NHS dispatched a rehabilitation specialist to the premises to assess the scope of the work and the amount of the loan. NHS prepared a work estimate and gave the homeowner a list of contractors, from which she chose plaintiff. At the job site, plaintiff set up an extension ladder, which he owned and used frequently. He acknowledged that the ladder was steady, had rubber shoes and was in proper working condition. When plaintiff began scraping rust from a window, however, the upper portion of the ladder retracted and he suffered an ankle injury.

Plaintiff sued the homeowner and NHS alleging a violation of Labor Law § 240 (1). All parties moved for summary judgment. Plaintiff contended that NHS was strictly liable as a statutory agent under the section for having failed to provide a proper workplace and mandated safety equipment. In his deposition, however, plaintiff stated that the ladder was securely placed and not broken or defective. He also said there was no need to have anyone hold the ladder while he was using or ascending it. NHS cross-moved, asserting it could not be liable because it was not a general contractor or agent within the meaning of the Labor Law and did not direct, control or supervise the method or manner of plaintiff's work. It challenged plaintiff's section 240 (1) claim as conclusory, citing the lack of any evidence as to the alleged deficiency of the ladder or work site. NHS also claimed that plaintiff's actions alone caused the injury. Owing to the

statutory exclusion,[1] Supreme Court granted the homeowner's motion but denied NHS summary judgment, concluding there were questions of fact as to whether NHS directed or controlled the work. The court also denied plaintiff's motion as to liability under Labor Law § 240 (1). The Appellate Division affirmed (262 AD2d 244 [1st Dept 1999]).

At trial, plaintiff again conceded that he could not identify a defect in the ladder, that it was stable and there was no reason to have it steadied during use. He also revealed that he was not sure if he had locked the extension clips in place before ascending the rungs. At the close of the case, the court asked the jury to indicate on the verdict sheet whether NHS had "the authority to direct, supervise and control Mr. Blake's work" at the residence. The jury answered yes. In response to the second inquiry ("Was the ladder being used by plaintiff Rupert Blake so constructed, operated as to give proper protection to plaintiff?"), the jury again said yes, leading to the inescapable conclusion that the accident happened not because the ladder malfunctioned or was defective or improperly placed, but solely because of plaintiff's own negligence in the way he used it.

The trial court denied plaintiff's motion to vacate the jury's verdict and direct one in his favor. The Appellate Division affirmed, stating that "a factual issue was posed as to whether plaintiff's injury was caused by some inadequacy of the ladder or was solely attributable to the manner in which plaintiff used the ladder" and that there were no grounds to disturb the jury's factual determinations (301 AD2d 366, 367 [2003]). We affirm.

Plaintiff claims that Labor Law § 240 (1) is a strict (or absolute) liability statute and that the court should have set aside the jury's verdict. In reviewing our scaffold law jurisprudence, several themes are relevant to this case, including the statute's history and purpose and plaintiff's claims relating to strict or absolute liability. We also address the issue of plaintiff's actions being the sole proximate cause of the accident and whether NHS can be held liable as an agent under the statute.

## A. THE HISTORY AND PURPOSE OF LABOR LAW § 240 (1)

The first scaffold law, an ancestor of our Labor Law § 240 (1), was enacted 118 years ago, in response to the Legislature's

---

**1.** In 1980, the Legislature amended Labor Law § 240 (1) by excepting "owners of one and two-family dwellings who contract for but do not direct or control the work" (L 1980, ch 670, § 1; *see generally Bartoo v Buell*, 87 NY2d 362 [1996]; *Mandelos v Karavasidis*, 86 NY2d 767 [1995]).

concern over unsafe conditions that beset employees who worked at heights (*see* L 1885, ch 314). In promulgating the statute, the lawmakers reacted to widespread accounts of deaths and injuries in the construction trades. Newspapers carried articles attesting to the frequency of injuries caused by rickety and defective scaffolds. In 1885 alone, there were several articles detailing both the extent of these accidents and the legislation directed at the problem.[2]

The lawmakers enacted the 1885 statute when personal injury suits of this type were based on common-law duties of a master to a servant (*see e.g. Vosburgh v Lake Shore & Mich. S. Ry. Co.*, 94 NY 374 [1884]; *Devlin v Smith*, 89 NY 470 [1882]). For that reason, the Legislature aimed this first scaffold law ("AN ACT for the protection of life and limb") at "[a] person employing or directing another." (L 1885, ch 314, § 1.) Although the statute's wording has evolved, the original, core language is still with us. The Legislature eventually added other devices,[3] but the first statute contained the very words "scaffolding, hoists, stays, ladders" still found in Labor Law § 240 (1). Moreover, the law covered, as it does today, "erection, repairing, altering or painting" of structures. Most tellingly, the lawmakers fashioned this pioneer legislation to "give proper protection" to the worker. Those words are at the heart of the statute and have endured through every amendment.

Even though the first scaffold law exposed violators to civil and criminal responsibility, it fell short of the mark because the employer could escape liability by blaming the employee's coworkers (*see e.g. Kimmer v Weber*, 151 NY 417, 421 [1897]; *Butler v Townsend*, 126 NY 105, 111 [1891]). This was changed with an 1897 amendment to the scaffold law, as part of a larger Labor Law initiative dealing with factories, bakeries, tenement-made articles, and the employment of women and children (*see* L 1897, ch 415, § 18).[4] The amendment did two things: it placed the onus directly on the employer, and it prompted our Court to interpret the law as creating a presumption of employer liability

---

2. *See generally Provisions of the Bills which have Now Become Laws*, New York Times, May 26, 1885, at 5; *Under the New Law*, New York Times, July 2, 1885, at 8; *The Employer Held Responsible*, New York Times, July 7, 1885, at 8; *Three Men Killed*, New York Times, July 15, 1885, at 3; *Carried Down with the Scaffold*, New York Times, Sept. 1, 1885, at 8; *Maimed by a Breaking Scaffold*, New York Times, Nov. 29, 1885, at 3.

3. *See* L 1921, ch 50, § 240.

4. In the interim, the Legislature enacted additional requirements for scaffolds more than 20 feet from the ground (*see* L 1891, ch 214), and authorized

when a scaffold (or ladder) collapses. We recognized that sound scaffolds and ladders do not simply break apart (*see Stewart v Ferguson*, 164 NY 553 [1900]). The Legislature looked to employers (and later, contractors and owners) as the entities best able to control the workplace and provide for its safety, casting them in liability for their failure to obey the law.[5] The objective was—and still is—to force owners and contractors to provide a safe workplace, under pain of damages.

The 1897 statute[6] was a giant step forward, but it still left employers free to invoke the plaintiff's contributory negligence (*see Gombert v McKay*, 201 NY 27, 31 [1911]; *see also* L 1910, ch 352). Indeed, throughout all the scaffold law's amendments, including the present section 240 (1), the statutory language has never explicitly barred contributory negligence as a defense. Our Court, however, did so in 1948, reasoning that the statute should be interpreted that way if it is to meet its objective (*see Koenig v Patrick Constr. Corp.*, 298 NY 313, 316-317 [1948]). Since then we have steadfastly held that contributory negligence will not exonerate a defendant who has violated the statute and proximately caused a plaintiff's injury (*see e.g. Zimmer v Chemung County Performing Arts*, 65 NY2d 513, 521 [1985]; *Stolt v General Foods Corp.*, 81 NY2d 918 [1993]). At no time, however, did the Court or the Legislature ever suggest that a defendant should be treated as an insurer after having furnished a safe workplace. The point of Labor Law § 240 (1) is to compel contractors and owners to comply with the law, not to penalize them when they have done so.

## B. STRICT (OR ABSOLUTE) LIABILITY

Plaintiff asserts, in essence, that despite the jury's findings he is entitled to recover because Labor Law § 240 (1) provides for strict (or absolute) liability. In addressing this contention, we note that the words strict or absolute liability do not appear in Labor Law § 240 (1) or any of its predecessors. Indeed, it was the Court—and not the Legislature—that began to use this

police to inspect scaffolding, with misdemeanor consequences for violating the scaffold law (*see* L 1892, ch 517).

**5.** In 1969, the Legislature amended section 240 (1) to place the responsibility on "[a]ll contractors and owners and their agents" in place of "[a] person employing or directing another to perform labor of any kind" (L 1969, ch 1108, § 1).

**6.** Later reconstituted in Laws of 1909 (ch 36), as amended by Laws of 1911 (ch 693); and as Labor Law § 240 (1) by virtue of Laws of 1921 (ch 50), as amended by Laws of 1947 (ch 683).

terminology in 1923 (under an earlier version of the statute [*see* L 1921, ch 50]), holding that employers had an "absolute duty" to furnish safe scaffolding and would be liable when they failed to do so and injury resulted (*Maleeny v Standard Shipbuilding Corp.*, 237 NY 250, 253 [1923]; *see also Amberg v Kinley*, 214 NY 531, 545 [1915] [Collin, J., dissenting]). We used a similar phrase 25 years later in *Koenig* (298 NY at 318 [a duty "absolutely imposed"]). In *Connors v Boorstein* (4 NY2d 172, 175 [1958]) the Court, for the first time, worded the concept as "absolute liability" under section 240 (1). We did so again in *Major v Waverly & Ogden* (7 NY2d 332, 336 [1960] ["absolute statutory liability"]) and *Duda v Rouse Constr. Corp.* (32 NY2d 405, 408 [1973] ["absolute liability"]).

The Court has also described liability under Labor Law § 240 (1) as "absolute" in the sense that owners or contractors not actually involved in construction can be held liable (*see Haimes v New York Tel. Co.*, 46 NY2d 132, 136 [1978]), regardless of whether they exercise supervision or control over the work (*see Ross v Curtis-Palmer Hydro-Elec. Co.*, 81 NY2d 494, 500 [1993]). Intending the same meaning as absolute liability in Labor Law § 240 (1) contexts, the Court in 1990 introduced the term "strict liability" (*Cannon v Putnam*, 76 NY2d 644, 649 [1990]) and from that point on used the terms interchangeably.

Throughout our section 240 (1) jurisprudence we have stressed two points in applying the doctrine of strict (or absolute) liability. First, that liability is contingent on a statutory violation and proximate cause. As we said in *Duda* (32 NY2d at 410), "[v]iolation of the statute alone is not enough; plaintiff [is] obligated to show that the violation was a contributing cause of his fall,"[7] and second, that when those elements are established, contributory negligence cannot defeat the plaintiff's claim. Section 240 (1) is, therefore, an exception to CPLR 1411, which recognizes contributory negligence as a defense in personal injury actions (*see Mullen v Zoebe, Inc.*, 86 NY2d 135, 143 [1995]; *Bland v Manocherian*, 66 NY2d 452, 461 [1985]).

It is imperative, therefore, to recognize that the phrase "strict (or absolute) liability" in the Labor Law § 240 (1) context is different from the use of the term elsewhere. Often, the term means "liability without fault" (*see generally* 3 Harper, James

7. *See also Panek v County of Albany* (99 NY2d 452, 457 [2003] ["the section imposes absolute liability on owners, contractors and their agents for any breach of the statutory duty that proximately causes a plaintiff's injury"]).

and Gray, Torts § 14.1 *et seq.* [2d ed 1986]), as where a person is held automatically liable for causing injury even though the activity violates no law and is carried out with the utmost care. Illustrations include blasting activities (*see Spano v Perini Corp.,* 25 NY2d 11, 15 [1969]), keeping wild animals (*see Arbegast v Board of Educ.,* 65 NY2d 161, 164-165 [1985]) and discharging petroleum (*see* Navigation Law § 181 [1]; *White v Long,* 85 NY2d 564, 568 [1995]; *State of New York v Green,* 96 NY2d 403, 405 [2001]; *see generally* Prosser and Keeton, Torts § 78 [5th ed 1984]). We also refer to strict liability when discussing products liability arising out of a defective design or the failure to warn (*see Sukljian v Charles Ross & Son Co.,* 69 NY2d 89, 94 [1986]; *Sage v Fairchild-Swearingen Corp.,* 70 NY2d 579, 585 [1987]). In these instances, manufacturers of defective products may be held "strictly liable" for injury caused by those products, regardless of privity, foreseeability or reasonable care (*see Sprung v MTR Ravensburg,* 99 NY2d 468, 472 [2003]).

Courts also speak of strict liability in commercial settings, as where the Uniform Commercial Code fastens "strict liability" on a bank that charges against its customer's account any "item" that is not "properly payable" (UCC 4-401 [1]; *Monreal v Fleet Bank,* 95 NY2d 204, 207 [2000]).

Given the varying meanings of strict (or absolute) liability in these different settings, it is not surprising that the concept has generated a good deal of litigation under Labor Law § 240 (1). The terms may have given rise to the mistaken belief that a fall from a scaffold or ladder, in and of itself, results in an award of damages to the injured party. That is not the law, and we have never held or suggested otherwise. As we stated in *Narducci v Manhasset Bay Assoc.* (96 NY2d 259, 267 [2001]), "[n]ot every worker who falls at a construction site, and not any object that falls on a worker, gives rise to the extraordinary protections of Labor Law § 240 (1)." Also, the Appellate Division had recognized as much in *Beesimer v Albany Ave./Rte. 9 Realty* (216 AD2d 853, 854 [3d Dept 1995]), stating: "the mere fact that [a plaintiff] fell off the scaffolding surface is insufficient, in and of itself, to establish that the device did not provide proper protection" (*see also Alava v City of New York,* 246 AD2d 614,

615 [2d Dept 1998] ["a fall from a scaffold does not establish, in and of itself, that proper protection was not provided"]).⁸

■ Put differently, an accident alone does not establish a Labor Law § 240 (1) violation or causation. This Court has repeatedly explained that "strict" or "absolute" liability is necessarily contingent on a violation of section 240 (1). In *Melber v 6333 Main St.* (91 NY2d 759, 762 [1998]), we noted that "we have held that the statute establishes absolute liability for a breach which proximately causes an injury." In *Zimmer* (65 NY2d at 522), we found that "a violation of section 240 (1) . . . creates absolute liability" and that "[t]he failure to provide any safety devices is such a violation." Moreover, causation must also be established. As the Court held in *Duda* (32 NY2d at 410 [1973]), the "plaintiff was obligated to show that the violation [of section 240 (1)] was a contributing cause of his fall." Here, plaintiff has shown no violation of Labor Law § 240 (1).

In support of his claim, plaintiff argues that comparative negligence is not a defense to absolute liability under the statute. This is true (*see Raquet v Braun*, 90 NY2d 177, 184 [1997]; *Bland v Manocherian*, 66 NY2d 452, 461 [1985]). But we are not dealing here with comparative fault, by which a culpable defendant is able to reduce its responsibility upon a finding that the plaintiff was also at fault. That would be impermissible

---

**8.** In cases involving ladders or scaffolds that collapse or malfunction for no apparent reason, we have (ever since *Stewart v Ferguson*, 164 NY 553 [1900], *supra*) continued to aid plaintiffs with a presumption that the ladder or scaffolding device was not good enough to afford proper protection. See *Panek v County of Albany* (99 NY2d 452, 458 [2003] [summary judgment appropriate for the plaintiff where it was uncontroverted that a ladder collapsed beneath him, causing the fall]); *Styer v Walter Vita Constr.* (174 AD2d 662 [2d Dept 1991]); *Olson v Pyramid Crossgates Co.* (291 AD2d 706 [3d Dept 2002]). Once the plaintiff makes a prima facie showing the burden then shifts to the defendant, who may defeat plaintiff's motion for summary judgment only if there is a plausible view of the evidence—enough to raise a fact question— that there was no statutory violation and that plaintiff's own acts or omissions were the sole cause of the accident. If defendant's assertions in response fail to raise a fact question as to these issues, the plaintiff must be accorded summary judgment (*see Klein v City of New York*, 89 NY2d 833, 835 [1996]). On the other hand, defendant may be granted summary judgment if the record establishes conclusively that no Labor Law § 240 (1) violation was shown to have been a proximate cause of the accident and that the accident was therefore caused solely by plaintiff's conduct (*see e.g. Stark v Eastman Kodak Co.*, 256 AD2d 1134 [4th Dept 1998]; *Custer v Cortland Hous. Auth.*, 266 AD2d 619, 621 [3d Dept 1999]). Given the procedural posture of the case before us, we address neither the propriety of Supreme Court's denial of plaintiff's motion for summary judgment nor whether defendant should have been granted summary judgment or a directed verdict.

under section 240 (1). Here, there is no comparative culpability. As the jury implicitly found, the fault was entirely plaintiff's. The ladder afforded him proper protection. Plaintiff's conduct (here, his negligence) was the sole proximate cause of the accident.

## C. PLAINTIFF'S CONDUCT AS THE ACCIDENT'S SOLE PROXIMATE CAUSE

Plaintiff argues that he is entitled to recover in the face of a record that shows no violation and reveals that he was entirely responsible for his own injuries. There is no basis for this argument. Even when a worker is not "recalcitrant,"[9] we have held that there can be no liability under section 240 (1) when there is no violation and the worker's actions (here, his negligence) are the "sole proximate cause" of the accident. Extending the statute to impose liability in such a case would be inconsistent with statutory goals since the accident was not caused by the absence of (or defect in) any safety device, or in the way the safety device was placed.

In *Weininger v Hagedorn & Co.* (91 NY2d 958, 960 [1998]), we held that "Supreme Court erred . . . in directing a verdict in favor of plaintiff, at the close of his own case, on the issue of proximate cause" where "a reasonable jury could have concluded that plaintiff's actions were the sole proximate cause of his injuries, and consequently that liability under [section] 240 (1) did not attach." Contrary to plaintiff's claim, the Appellate Division has held (both before and after *Weininger*) that a defendant is not liable under Labor Law § 240 (1) where there is no evidence of violation and the proof reveals that the plaintiff's own negligence was the sole proximate cause of the accident. Under Labor Law § 240 (1) it is conceptually impossible for a statutory violation (which serves as a proximate cause for a plaintiff's injury) to occupy the same ground as a plaintiff's sole proximate cause for the injury. Thus, if a statutory violation is a proximate cause of an injury, the plaintiff cannot be solely to blame for it. Conversely, if the plaintiff is solely to blame for the injury, it necessarily means that there has been no statutory violation. That is what we held in *Weininger*, a holding the Ap-

---

**9.** Labor Law § 240 (1) does not extend to a "recalcitrant worker," meaning one whose refusal to use available safety devices results in injury (*see Hagins v State of New York*, 81 NY2d 921, 923 [1993]). Plaintiff was not a recalcitrant worker.

pellate Division has consistently understood and applied.[10] The Pattern Jury Instructions reflect a like-minded interpretation of *Weininger* (*see* PJI3d 2:217 [2003]).[11] We reaffirm that holding today.

As in *Weininger*, the record now before us fully supports the jury's findings that there was no statutory violation and that plaintiff alone, by negligently using the ladder with the extension clips unlocked, was fully responsible for his injury.

Plaintiff relies heavily on *Bland v Manocherian* (66 NY2d at 457). There, the jury found that the ladder in question was not "placed so as to give proper protection to the plaintiff" and that "improper placement of the ladder [was] a proximate cause of the accident" (*id.*). We held that "[t]he jury was clearly entitled to find that, under the circumstances, defendants failed to satisfy the responsibilities imposed by section 240 (1) in that they had not 'erected' or 'placed' the ladder from which plaintiff fell in such a manner, or with such safeguards, as necessary to provide plaintiff with 'proper protection' while he was working on defendants' building" (*id.* at 460).

In reaching this conclusion, we noted the nature of the work the plaintiff had to perform while on the ladder and the conditions at the work site. "[P]ressure would have to be applied to

10. See *Meade v Rock-McGraw, Inc.* (307 AD2d 156, 159 [1st Dept 2003] ["That the ladder was inadequately secured was due to plaintiff's improper use of it, which would not give rise to a Labor Law violation"]); *Heffernan v Bais Corp.* (294 AD2d 401, 403 [2d Dept 2002] [defendant raised a question of fact as to whether scaffold failure resulted solely from plaintiff's negligence]); *Musselman v Charles A. Gaetano Constr. Corp.* (277 AD2d 691, 692 [3d Dept 2000] ["although contributory negligence is not a defense to a valid Labor Law § 240 (1) claim . . . liability will not attach if the worker's action were the sole proximate cause of his or her injuries"]); *Gomes v State of New York* (272 AD2d 440 [2d Dept 2000] [affirming Court of Claims' dismissal after crediting the State's expert testimony that plaintiff's misuse of an extension ladder was responsible for his accident in which his arm became caught between the rungs when the ladder retracted downward]); *Bahrman v Holtsville Fire Dist.* (270 AD2d 438, 439 [2d Dept 2000] [question of fact as to whether plaintiff's fall occurred due to his own misuse of a safety device and whether such conduct was the sole proximate cause of his injuries]); *Stark v Eastman Kodak Co.* (256 AD2d 1134 [4th Dept 1998] [where ladder was not defective and did not move, plaintiff's actions were the sole proximate cause of his injury thus making summary judgment appropriate in favor of defendant, not plaintiff]); *Vencebi v Waldorf Astoria Hotel Corp.* (143 AD2d 1004, 1005 [2d Dept 1988] [jury question whether accident occurred because scaffold moved or because of plaintiff's method of climbing onto it]).

11. "If you conclude that the plaintiff's action was the only substantial factor in bringing about the injury, you will find for the defendant on [section 240 (1) liability]."

the sashes and, at the same time, the windows forcibly twisted loose, all while plaintiff was standing on a ladder" (*id.*). Further, and also in contrast to the case before us, there was testimony that "the floor upon which the ladder was placed was bare, highly polished and shiny" and that "no safety equipment, safety belts, hard hats, scaffolding or anything else, was used to protect plaintiff from falling through the fourth floor window or to secure the ladder to insure that it remained steady and erect while plaintiff was applying pressure to that window" (*id.*).

*Bland*, then, does not support plaintiff's position or stand for the proposition that regardless of the facts every ladder injury leads ineluctably to liability under section 240 (1). In *Bland*, there were affirmed findings of fact, supported by the evidence, from which the jury could find that defendants had failed to satisfy their section 240 (1) responsibilities. Here, in contrast, the affirmed findings of fact were supported by the record, enabling the jury to conclude that there was no violation of the Labor Law. The record in *Bland* fairly suggested that better safety devices could have prevented the accident. In our case, the ladder was undisputedly in proper working order, and no further devices were necessary.

To be sure, we have long·held that "this statute is one for the protection of work[ers] from injury and undoubtedly is to be construed as liberally as may be for the accomplishment of the purpose for which it was thus framed" (*Quigley v Thatcher*, 207 NY 66, 68 [1912]). But to impose liability for a ladder injury even though all the proper safety precautions were met would not further the Legislature's purpose. It would, instead, be a sweeping and dramatic turnabout that the statute neither permits nor contemplates. As we recognized in a related context, the language of Labor Law § 240 (1) "must not be strained" to accomplish what the Legislature did not intend (*Martinez v City of New York*, 93 NY2d 322, 326 [1999]). If liability were to attach even though the proper safety devices were entirely sound and in place, the Legislature would have simply said so, or made owners and contractors into insurers. Instead, the Legislature has enacted no-fault workers' compensation to address workplace injuries where, as here, the worker is entirely at fault and there has been no Labor Law violation shown.

## D. AGENCY UNDER SECTION 240 (1)

Lastly, this case presents the question whether defendant NHS could be liable as an agent of the owner under Labor Law

§ 240 (1). That section imposes liability only on contractors, owners or their agents. NHS is clearly not a contractor or an owner. An agency relationship for purposes of section 240 (1) arises only when work is delegated to a third party who obtains the authority to supervise and control the job. Where responsibility for the activity surrounding an injury was not delegated to the third party, there is no agency liability under the statute (*Russin v Picciano & Son*, 54 NY2d 311, 318 [1981]).

■ NHS lacked the requisite indicia of agency. Although defendant here coordinated home repair work, it did not involve itself with the details of how individual contractors would perform their jobs. Instead, NHS acted as a lender: it is a nonprofit organization that provides low-interest loans. The homeowner retained primary control over decisions on how the renovation project would proceed. NHS did not supervise the contractor; it never instructed workers on how to undertake repairs, and it took only a de minimis role in ensuring that the contractor would complete the financed repairs.

Accordingly, the order of the Appellate Division should be affirmed, with costs.

Chief Judge KAYE and Judges G.B. SMITH, CIPARICK, GRAFFEO and READ concur.

Order affirmed, with costs.