■ CHAUDRY NOOR, Respondent, v CITY OF NEW YORK et al., Appellants. [15 NYS3d 13]—

Judgment, Supreme Court, New York County (Manuel J. Mendez, J.), entered November 22, 2013, after a jury trial, awarding plaintiff damages, modified, on the law, to the extent of vacating the award of damages and remanding for a new trial on damages, and otherwise affirmed, without costs.

Plaintiff, a welder, was injured when a closed A-frame ladder, which he had leaned against a recently-installed water tank on which he was welding a seam, slipped, causing him to fall from it. The tank was 18 feet long, 14 feet wide, and approximately 8 feet tall. It was situated on a platform that was three feet wide. Because of that narrow width, plaintiff was unable to fully open the ladder with the rungs parallel to the

tank, which would have permitted him to directly face the area he needed to weld. While the ladder could have been opened on the platform with the rungs perpendicular to the tank, plaintiff testified that this would have been very difficult. He explained that he would have had to twist his entire body to perform the work and that he would have tired out every five minutes while trying to weld a seam that would have taken him one hour under ordinary circumstances. Plaintiff, and two coworkers who were in the same room with him when the accident occurred, testified that the type of welding they were doing was always done with an A-Frame ladder. By all accounts the ladder was in good working condition. Plaintiff testified that no one ever gave him any instructions on how to perform his work on the project. Plaintiff and his coworkers all testified that they had used a pipe scaffold to erect the tank, but, according to all three workers, the scaffold had been removed from the room when they began welding. The project manager for plaintiff's employer testified that he was on the site at most every other day, and that the pipe scaffold remained in the room until the project was complete.

Plaintiff explained that, after he completed his work, he began to descend the ladder, but before he could finish taking the first step, the ladder "shook." While he was trying to grab the top of the tank, the ladder "knocked" him onto the floor below the platform. He had not previously felt the ladder move. After he fell, he saw that the bottom of the ladder had slid slightly away from the tank, but the ladder was still leaning against the tank. Plaintiff testified that the ladder moved because he had placed it on top of electrical wires and pipes that were arrayed on the platform. Plaintiff acknowledged that he had testified in a General Municipal Law § 50-h hearing that he did not know what caused the ladder to move.

Following the close of evidence in the liability phase of this bifurcated trial, plaintiff moved for a directed verdict on his Labor Law § 240 (1) claim. The court granted the motion, stating that the workers believed they were expected to work with an A-frame ladder in the closed position, since that is how they had always worked. The court further found that the ladder was the only equipment with which plaintiff had been provided, that it was inadequate for the task at hand, and that the lack of an adequate safety device proximately caused the accident. The court noted that the pipe scaffold was provided to erect the tank, but that the workers were not expected to use it for welding.

The jury found that defendant Aspro Mechanical Contract-

ing, Inc., the general contractor, but not defendant City, the owner, was negligent and had violated Labor Law § 200, but that such negligence and violation did not proximately cause the accident. As to the Labor Law § 241 (6) claim, the jury found that there was no violation of Industrial Code (12 NYCRR) § 23-1.21 (e) (3), since "the platform where plaintiff placed the A-frame ladder at the time of the accident provide[d] firm level footing." The jury found that "plaintiff's negligence [was] a substantial factor in causing his accident." It determined that plaintiff was 55% at fault; the general contractor was 35% at fault; and the City 10% at fault. However, the court deemed the verdict to have found plaintiff 100% liable, since it found that neither the City's nor Astro's actions substantially contributed to the accident.

Plaintiff's only medical expert during the damages phase was his treating physician, Shahid Mian, M.D. Prior to the trial, defendants had served Dr. Mian with a subpoena duces tecum demanding the production of "certified complete copies of all office notes, reports, tests, test results, diagnostic tests, documents and medical records . . . with respect to the evaluation, diagnosis and treatment of [plaintiff]." Dr. Mian's office disclosed records in response to the subpoena, and certified that "the copies produced represent all the documents described in the subpoena duces tecum." On the day Dr. Mian appeared to testify, defense counsel noticed that the records brought by him to court that day were much more voluminous than those produced in response to the subpoena, and that they included previously undisclosed handwritten notes, physical therapy notes, and reports from physicians. Counsel objected on the basis that defendants had no way of knowing if they were in a sufficient position to challenge Dr. Mian's testimony. Plaintiff's counsel did not dispute that defense counsel received less than the complete medical file compiled by Dr. Mian, but noted that counsel had been provided with authorizations for all of plaintiff's medical providers.

The court asked defense counsel to clarify which records were not previously provided, but counsel stated that he "need[ed] time to go through everything," and was only able to do a "cursory review" in the 10 minutes available. Rather than affording any time for a further review, the court ruled that plaintiff's medical records would be admitted, with the exception of the handwritten notes. The court further ruled that defense counsel would be permitted to cross-examine Dr. Mian on the fact of the discrepancy of the records produced pursuant to subpoena and those brought to court. Finally, the court also

indicated that it would instruct the jury to draw "any inference from the fact that what . . . is included in his records [is] not in the records that he submitted into court," including an inference of "his bias or his willingness not to divulge all of the information to the defense counsel."

A verdict may be directed only if the "court finds that, upon the evidence presented, there is no rational process by which the fact trier could base a finding in favor of the nonmoving party" (*Szczerbiak v Pilat*, 90 NY2d 553, 556 [1997]). The benefit of all inferences is afforded to the non moving party, and the facts are viewed in a light most favorable to it (*id.*). Here, plaintiff argued that there was no issue of fact necessary for a jury to resolve regarding whether defendants violated their obligation under Labor Law § 240 (1) to provide him with an appropriate safety device to guard against the elevation-related risk. That is because, he asserts, there was no alternative safety device readily available to him, and he had no choice but to place the ladder in the closed position given the way the tank was situated. Defendants do not dispute that an unsecured ladder, even one in good condition, can give rise to Labor Law § 240 (1) liability if the worker falls from it (*see Fanning v Rockefeller Univ.*, 106 AD3d 484 [1st Dept 2013]). However, they argue that plaintiff should have used the pipe scaffold that his foreman testified was in the room where he was working. Alternatively, they contend that he could have used the ladder in question in an open position had he merely turned it 90 degrees, and that his decision not to was the sole proximate cause of the accident.

A party charged under Labor Law § 240 (1) with the duty to provide enumerated safety devices will be absolved of liability where a worker attempts to perform a task at elevation without proper protection, if the proper safety device was "readily available" and it would have been the worker's "normal and logical response" to get it (*Montgomery v Federal Express Corp.*, 4 NY3d 805, 806 [2005] [internal quotation marks omitted]; *Rice v West 37th Group, LLC*, 78 AD3d 492, 495 [1st Dept 2010]). Defendants argue that the pipe scaffold used to erect the tank was readily available because, according to the project manager for plaintiff's employer, it was in the very room where plaintiff and his coworkers were welding. Although plaintiff and his coworkers all testified that the scaffold was not in the room, the court was not in a position to rule as a matter of law that the scaffold was not there. That would have been a question for the jury.

Nevertheless, defendants failed to establish that the scaffold

would have been a suitable safety device. The burden was on them to elicit evidence that the scaffold would have permitted plaintiff to carry out the welding he was performing at the time of the accident (*see Balbuena v New York Stock Exch., Inc.*, 49 AD3d 374, 375-376 [1st Dept 2008], *lv denied* 14 NY3d 709 [2010]). However, the project manager described the pipe scaffold in insufficient detail for the jury to have been able to envision how it would have been set up and to conclude that it would have been practical for plaintiff to use it. Moreover, defendants offered no evidence that it would have been plaintiff's "normal and logical response" to use the scaffold (*Montgomery*, 4 NY3d at 806 [internal quotation marks omitted]). After all, plaintiff and his coworkers testified that they had always used an A-frame ladder to get close enough to a water tank to perform the necessary welding. Defendants did not offer any evidence to suggest that plaintiff would have viewed a pipe scaffold as a suitable alternative means to conduct the work. Nor did they establish that he was a recalcitrant worker, since they did not offer any evidence showing that he was actually instructed to use the pipe scaffold (*see Dwyer v Central Park Studios, Inc.*, 98 AD3d 882, 884 [1st Dept 2012]).

A worker's decision to use an A-frame ladder in the closed position is not a per se reason to declare him the sole proximate cause of an accident (*see Rico-Castro v Do & Co N.Y. Catering, Inc.*, 60 AD3d 749 [2d Dept 2009]). To be sure, we do not disagree with the dissent that, in principle, placement of an A-frame ladder in the closed position "*can* constitute misuse of a safety device" (emphasis added). However, the cases cited by the dissent in support of that notion do not dictate a different result here. In *Nalepa v South Hill Bus. Campus, LLC* (123 AD3d 1190 [3d Dept 2014], *lv denied* 25 NY3d 909 [2015]), the plaintiff admitted that there was no reason why he could not open the ladder and that his placement of the ladder was contrary to his safety training. In *Santiago v Fred-Doug 117, L.L.C.* (68 AD3d 555 [1st Dept 2009]), the only evidence concerning the plaintiff's use of the ladder in the closed position was that he was warned that it was not safe, but responded that he knew what he was doing.

Here, plaintiff gave a specific reason why he used the ladder in the closed position. Plaintiff testified that using the ladder in an open position and twisting his body to face the tank would have been exhausting, requiring him to take frequent breaks, which defendants did not dispute. Indeed, defendants' assertion that turning the ladder would have presented an issue of "[m]ere expediency or inconvenience" mischaracterizes the rec-

ord. In any event, we are hesitant to adopt a rule that, in order to permit a worker to enjoy the protection of Labor Law § 240 (1), would require him to take extraordinary measures to perform his work, when he has a good faith belief that doing so would cause him acute discomfort while drastically slowing his pace.

The dissent's comparison of this case to *Ross v Curtis-Palmer Hydro-Elec. Co.* (81 NY2d 494 [1993]) falls flat. There, the Court of Appeals held that Labor Law § 240 (1) did not apply where the plaintiff, also a welder, injured his back as a result of having worked in a contorted position on a scaffold. The Court acknowledged that the scaffold, which was otherwise safe, may have been rendered unsafe, in the colloquial sense, by the fact that the plaintiff could only use it in the position which caused his injury. However, the Court held that a device can only be unsafe for purposes of section 240 (1) if a person's injury is caused by the direct application of gravity (81 NY2d at 501). Plaintiff's claim may very well have been barred by *Ross* if he had used the scaffold in the open position, rungs perpendicular to the tank, and strained his back while contorting his body. But that, of course, is not what happened. Rather, plaintiff concluded that he could not, as a practical matter, use the ladder in that way, a point not disputed by defendants, and opted instead to use it in the closed position, which led to his fall. Once gravity became implicated, the purposes underlying section 240 (1) did as well.

Nor do we find apt the dissent's analogy to *Weber v 1111 Park Ave. Realty Corp.* (253 AD2d 376 [1st Dept 1998]). In that case there is no indication that the A-frame ladder from which the plaintiff fell was, as here, closed and leaned against a wall, which is unquestionably a dangerous way to use such a ladder. Our disagreement with the dissent stems from our view that defendants violated the Labor Law by giving plaintiff no option but to use the ladder in that dangerous position to perform the task at hand. The evidence was clear on this point, and sufficient to permit the court to find that Labor Law § 240 (1) was violated as a matter of law.

Plaintiff's failure to ask his coworkers to hold the ladder while he worked also did not constitute the sole proximate cause of the accident, since a coworker "is not a safety device contemplated by the statute" (*McCarthy v Turner Constr., Inc.*, 52 AD3d 333, 334 [1st Dept 2008]). If anything, failure to ask a coworker for support amounts to comparative negligence (*see Velasco v Green-Wood Cemetery*, 8 AD3d 88, 89 [1st Dept 2004]).

The issue of whether plaintiff was negligent in placing the

ladder on electrical wires that he claimed (and defendants denied) were snaked across the tank platform is irrelevant to our analysis. That is because "[u]nder Labor Law § 240 (1) it is conceptually impossible for a statutory violation (which serves as a proximate cause for a plaintiff's injury) to occupy the same ground as a plaintiff's sole proximate cause for the injury. Thus, if a statutory violation is a proximate cause of an injury, the plaintiff cannot be solely to blame for it" (*Blake v Neighborhood Hous. Servs. of N.Y. City*, 1 NY3d 280, 290 [2003]). By the same reasoning, because plaintiff established that defendants violated Labor Law § 240 (1), the fact that the jury, which did not even have the question of 240 (1) liability before it, found that he was comparatively negligent for purposes of section 200, is immaterial.

Similarly, the fact that plaintiff claimed at his 50-h hearing that he did not recall what caused the accident is irrelevant, since the very fact that he fell as a result of defendants' failure to provide an adequate safety device was sufficient for the court to find that the statute was violated as a matter of law. Nor did the fact that plaintiff's description of his position on the ladder seemed implausible raise a credibility issue that is material to the analysis of this case. It was undisputed that plaintiff suffered the accident in the manner in which he described it, as his coworkers heard him shout out immediately before they heard him hit the floor, and noticed the ladder in a position indicating that it had slipped.

We do agree with defendants that a new trial on damages is required. The withholding of undisputedly relevant documents requested by defendants' subpoena deprived defendants of their right to a fair trial (*see Sansevere v United Parcel Serv.*, 181 AD2d 521, 522 [1st Dept 1992] [holding that "the trial court deprived the defendant of a fair trial" by precluding it from seeking to impeach the plaintiff's witness by presenting evidence of the criminal history of the sole witness to a hit-and-run accident]). This error was not harmless, in light of the voluminous nature of the documents and defendants' diminished ability to impeach plaintiff's sole medical expert, whose credibility was central to the case (*id.*). Concur—Gonzalez, P.J., Mazzarelli and Kapnick, JJ.

DeGrasse, J., dissents in part in a memorandum as follows: I dissent because I disagree with the part of the majority's opinion that affirms the trial court's grant of plaintiff's CPLR 4401 motion for judgment as a matter of law with respect to his Labor Law § 240 (1) cause of action. Plaintiff, a welder, was injured when he fell to the ground as he descended a closed

A-frame ladder that was leaning against an eight foot tall water tank. Plaintiff was welding seams on the water tank at the time of the accident. According to testimony at trial, the ladder was sturdy, equipped with rubber feet and had no defects. The water tank sat atop a platform that was three feet wide on the side where plaintiff had leaned the ladder. The ladder was two feet wide at the bottom. Therefore, the platform was wide enough to enable plaintiff to use the ladder in a secure open position.

In granting plaintiff's motion for judgment as a matter of law, the court found the ladder to be unsuitable for the work plaintiff was performing. The court's reasoning, which the majority adopts, is based on plaintiff's testimony that use of the ladder on the platform in an open position would have exhausted plaintiff by requiring him to twist his body into uncomfortable positions. The majority's reasoning misconstrues the purpose underlying Labor Law § 240 (1). The statute "was designed to prevent those types of accidents in which the scaffold, hoist, stay, ladder or other protective device proved inadequate to shield the injured worker *from harm directly flowing from the application of the force of gravity to an object or person*" (*Ross v Curtis-Palmer Hydro-Elec. Co.*, 81 NY2d 494, 501 [1993]). The key phrase is "directly flowing." Based upon the trial evidence and the parties' arguments, there is at least a factual issue as to whether Labor Law § 240 (1) was violated because the claimed inadequacy of the ladder does not implicate the effects of gravity. Instead, it relates to plaintiff's ability to weld the water tank without discomfort. Although not completely analogous, *Ross* illustrates the distinction. *Ross* involved a plaintiff who injured his back while welding a seam at the top of a shaft that was 40 to 50 feet deep (*id.* at 498). The injury occurred because the plaintiff in *Ross* had to strain and contort his upper torso "[i]n order to complete his welding job without falling from his perch" (*id.*). The Court in *Ross* found Labor Law § 240 (1) inapplicable because the injuries in that case "allegedly flowed from a deficiency in the [safety] device that was wholly unrelated to the hazard which brought about its need in the first instance" (*id.* at 501 [internal quotation marks omitted]). In keeping with the holding in *Ross*, the record before us warrants a factual determination as to whether the claimed defect in the ladder was related or unrelated to plaintiff's protection "from the application of the force of gravity" (*id.* at 501 [emphasis omitted]).

Plaintiff's burden was to show that a violation of Labor Law § 240 (1) was a contributing cause of the accident (*see Zimmer*

*v Chemung County Performing Arts*, 65 NY2d 513, 524 [1985]).
The only evidence regarding causation came in the form of
plaintiff's testimony. In his trial testimony, plaintiff stated that
the accident was caused by the ladder's placement on debris
that was on the platform. Plaintiff was impeached however by
his General Municipal Law § 50-h hearing testimony that he
did not know what caused the ladder to move. In light of the
impeachment, it would have been within the jury's province to
reject plaintiff's trial testimony and find that the cause of the
accident was undetermined. The resulting evidentiary gap
would have been consequential because, as noted above, the
ladder had no defects. " 'Where a plaintiff is injured in a fall
from a ladder, which is not otherwise shown to be defective,
the issue of whether the ladder provided the plaintiff with the
"proper protection" required under [Labor Law § 240 (1)] is a
question of fact for the jury' " (*Weber v 1111 Park Ave. Realty
Corp.*, 253 AD2d 376, 377 [1st Dept 1998], quoting *Rice v PCM
Dev. Agency Co.*, 230 AD2d 898, 899 [2d Dept 1996]).

There is also an issue as to whether plaintiff's actions were
the sole proximate cause of the accident. If that had been the
case, liability under Labor Law § 240 (1) would not attach
(*Robinson v East Med. Ctr., LP*, 6 NY3d 550, 554 [2006]). A
plaintiff's misuse of a safety device can constitute the sole
proximate cause of an injury otherwise actionable under Labor
Law § 240 (1) (*see Blake v Neighborhood Hous. Servs. of N.Y.
City*, 1 NY3d 280, 290-291 [2003]). The issue of sole proximate
cause should have also been submitted to the jury based upon
the undisputed testimony that plaintiff fell from a closed,
unsecured A-frame ladder that he himself had leaned against
the water tank. Such placement of an A-frame ladder can con-
stitute misuse of a safety device (*see Nalepa v South Hill Bus.
Campus, LLC*, 123 AD3d 1190 [3d Dept 2014], *lv denied* 25
NY3d 909 [2015]; *Santiago v Fred-Doug 117, L.L.C.*, 68 AD3d
555 [1st Dept 2009]). The majority concedes this principle but
unconvincingly attempts to distinguish *Nalepa* and *Santiago*
on the ground that plaintiff "gave a specific reason why he
used the ladder in the closed position," that reason being the
alleged discomfort that working with the ladder in an open po-
sition would have caused him. I disagree with the majority's
reasoning on this point because plaintiff's proffered excuse is
insufficient to support the necessary finding that "there is no
rational process by which the fact trier could base a finding [on
the issue] in favor of the nonmoving party" (*Szczerbiak v Pilat*,
90 NY2d 553, 556 [1997]). Moreover, plaintiff's excuse is simply
one factor that the jury should have been allowed to consider
along with the other trial evidence in order to determine

whether plaintiff's actions were the sole proximate cause of the accident.

The majority correctly cites *Rico-Castro v Do & Co N.Y. Catering, Inc.* (60 AD3d 749 [2d Dept 2009]) for the proposition that "[a] worker's decision to use an A-frame ladder in the closed position is not a per se reason to declare him the sole proximate cause of an accident." I do not take a contrary position because it is not my argument that defendants should necessarily be granted judgment as a matter of law. Significantly, defendants did not move below for judgment pursuant to CPLR 4401. Accordingly, *Rico-Castro* is distinguishable because it involved an appeal from the denial of a defendant's cross motion for summary judgment dismissing a Labor Law § 240 (1) cause of action (*id.* at 749). Consistent with *Nalepa* and *Santiago*, my position is simply that the issue should have been submitted to the jury.

I also note that the trial court granted plaintiff's CPLR 4401 motion for judgment although the subject Labor Law § 240 (1) cause of action was never considered by the jury. The better practice would have been to submit the claim to the jury from the standpoint of judicial economy. If the jury is prevented from passing on the issues, an appellate court that disagrees with a verdict directed by the trial court under CPLR 4401 has no jury verdict to reinstate, wasting the time spent on trial (*see Matter of Austin v Consilvio*, 295 AD2d 244, 246 [1st Dept 2002]). Nonetheless, I agree that a new trial on damages is required for the reasons stated by the majority. I would reverse the order entered below and direct a new trial on the Labor Law § 240 (1) cause of action as well.