# State of New York
# Court of Appeals

MEMORANDUM

This memorandum is uncorrected and subject to revision before publication in the New York Reports.

No. 34  SSM 30
Waldemar Biaca-Neto, et al.,
    Appellants,
      v.
Boston Road II Housing
Development Fund Corporation,
et al.,
    Respondents.

Submitted by Lisa M. Comeau, for appellants.
Submitted by Jacqueline Mandell, for respondents.

MEMORANDUM:

The order of the Appellate Division should be modified, without costs, by denying defendants' motion for summary judgment as to the Labor Law § 240 (1) cause of action and loss of consortium cause of action insofar as based upon that section and, as so modified, affirmed.

On plaintiff Waldemar Biaca-Neto's third day at the subject job site, he looked on as his coworker pulled himself up to a scaffold beam that was approximately seven feet above the scaffold's platform, unhooked his safety belt, and entered the building under construction through a window cut-out. Plaintiff claims that, while attempting to perform the same maneuver immediately thereafter, he sustained injuries when he slipped and fell to the scaffold platform. The project's general contractor, defendant Mountco Construction and Development Corp., had previously instituted a standing order that workers were not permitted to enter the building through the window cut-outs. However, no evidence exists in this record that the general contractor or anyone else, including plaintiff's employer, advised plaintiff of the standing order. Instead, the record contains sworn statements from two of plaintiff's coworkers that they used the scaffolding "to go into the building . . . through openings for windows at the different floor levels."

A defendant has no liability under Labor Law § 240 (1) when plaintiffs: (1) "had adequate safety devices available," (2) "knew both that" the safety devices "were available and that [they were] expected to use them," (3) "chose for no good reason not to do so," and (4) would not have been injured had they "not made that choice" (Cahill v Triborough Bridge & Tunnel Auth., 4 NY3d 35, 40 [2004]). Here, a triable issue of fact exists as to whether plaintiff knew he was expected to use the safety devices provided to him, despite the apparent accepted practice of entering the building through the window cut-outs from the scaffolding. Indeed, as the Appellate Division dissent concluded, the Appellate Division majority (and the dissent here) "ignore[] the evidence in the record that workers

on this job site used the scaffold to go through window cut-outs to enter the interior of the building and that the scaffold was clearly inadequate for that purpose" (176 AD3d 1, 10 [1st Dept 2019] [Moulton, J., dissenting in part]).[1]

Given defendants' purported acquiescence to this alleged practice, the general contractor's standing order directing workers not to enter the building through the cut-outs is insufficient to entitle defendants to summary judgment (see Gallagher v New York Post, 14 NY3d 83, 88 [2010]).  Further, the accepted practice could have negated the normal and logical inclination to use the scaffold, stairs, or hoist instead of the cut-outs (see Montgomery v Federal Express Corp., 4 NY3d 805, 806 [2005]).  Finally, in context and given the other conflicting evidence in the record, a factfinder should determine whether plaintiff's statement that he "wasn't supposed to pass through there" unambiguously establishes that he knew he was expected to use the safety devices.

Accordingly, the Labor Law § 240 (1) cause of action was improperly dismissed because a triable issue of fact exists as to whether plaintiff's conduct was the sole proximate cause of his injuries.  So much of the related derivative loss of consortium cause of action also was erroneously dismissed.  No basis exists to reinstate the causes of action sounding in common-law negligence and Labor Law §§ 200 and 241 (6).

---

[1] The dissent at this Court omits from its factual recitation that plaintiff allegedly followed his coworker's lead in attempting to enter the building through the window cut-out.  The dissent also omits any reference to the sworn statements of plaintiff's coworkers described above.

Biaca-Neto, et al. v Boston Road II Housing Development Fund Corporation, et al.

SSM No. 30

GARCIA, J. (dissenting):

Plaintiff was working on scaffolding near the seventh floor of a 12-story building. It is undisputed that at least two fully functional devices – a scaffold staircase and a hoist – were available to enable plaintiff to safely descend from the scaffolding platform. It is

similarly undisputed that plaintiff was aware of those safety devices; he himself had built the scaffold staircase, and he had used the staircase to climb the scaffolding the morning of his accident. Yet plaintiff, an experienced and OSHA-certified worker, decided to take a shorter route. After unhooking his safety harness, plaintiff tried to climb the scaffold railing and hoist himself onto a cross-beam in order to enter the building through an unfinished window nine to ten feet above the platform. He was injured in the process. Plaintiff chose convenience over safety, and he alone is responsible for the resulting injuries.

Liability under Labor Law § 240 (1) "does not attach" where adequate safety devices are available and the plaintiff "knew he was expected to use them but for no good reason chose not to do so, causing an accident" (Gallagher v New York Post, 14 NY3d 83, 88 [2010]). Where a worker declines to use an available safety device, the worker's "own negligence is the sole proximate cause of his injury," precluding him from recovering (id., citing Cahill v Triborough Bridge & Tunnel Auth., 4 NY3d 35, 39-40 [2004]). Put differently, "an owner who has provided safety devices is not liable for failing to insist that a recalcitrant worker use the devices" (Cahill, 4 NY3d at 39 [internal quotation marks and citation omitted]). The owner's obligation is to provide appropriate safety devices – not to protect employees who ignore them.

We have consistently rejected attempts to impose liability on owners and contractors for injuries caused solely by an employee's reckless behavior. In Cahill v Triborough Bridge & Tunnel Auth., for instance, we held that "summary judgment should not have been granted in [the] plaintiff's favor" where he "chose not to use" an available safety

device (4 NY3d at 38, 40). Similarly, in <u>Montgomery v Federal Express Corp.</u>, we held that the plaintiff was "not entitled to recover under Labor Law § 240 (1)" where, "[r]ather than go and get a ladder," he chose to stand on an inverted bucket, and then jump down (4 NY3d 805, 806 [2005]). And in <u>Robinson v East Med. Ctr., LP</u>, we held that the plaintiff's "own negligent actions" – namely, "choosing to use a six-foot ladder that he knew was too short for the work to be accomplished" – were, "as a matter of law, the sole proximate cause of his injuries" since "there was adequate safety devices – eight-foot ladders – available for [the] plaintiff's use at the job site" (6 NY3d 550, 555 [2006]). By contrast, in <u>Gallagher v New York Post</u>, the plaintiff was permitted to recover because there was "no evidence in the record" that he knew "where to find the safety devices" or "that he was expected to use them" (14 NY3d at 88).

The record here is clear: plaintiff's own negligence was the sole proximate cause of his injuries. At the time of the accident, plaintiff had been employed by the same construction company for five or six months. The company "ma[d]e buildings and apartments" and, according to plaintiff, "[t]hey do almost everything." Plaintiff had previously worked for at least two other construction companies. As part of his current job, plaintiff was often responsible for erecting and dismantling scaffolding on worksites. He had a bachelor's degree from a four-year university, and became OSHA certified after completing a ten-hour course.

Just prior to the accident, plaintiff was standing on the building's exterior scaffolding when he was asked to work on the other side of the building. At least two functional safety devices were available to allow plaintiff to descend from the scaffolding

platform: a scaffold staircase and a hoist.  Plaintiff was well aware of those safety devices.  During his deposition, plaintiff confirmed that he himself had built the scaffolding, including its built-in staircase.  He also admitted that he had climbed the scaffold staircase earlier that day in order to reach the scaffolding platform where he was working.

Rather than descending by way of the hoist, or the scaffold staircase that he had built and used, plaintiff chose to scale the lateral beams of the scaffolding in order to enter the building's interior through a window cutout.  In order to reach the cutout, which was nine to ten feet above the scaffolding platform, plaintiff – who was five feet, eight inches tall – was required to disconnect his safety harness, climb up the scaffolding frame, and hoist himself onto a steel cross-beam connecting the scaffolding to the building.  In the process, plaintiff – perhaps unsurprisingly – injured his shoulder.

As adequate safety devices were readily available, plaintiff's "normal and logical response" should have been to use them – not to take an objectively unsafe shortcut (Montgomery, 4 NY3d at 806).  Plaintiff does not allege that anyone directed him to enter the building in such an ill-advised and unpredictable manner, and Labor Law § 240 (1) contains no requirement that owners and contractors expressly "advise[]" workers that reckless behavior is prohibited (majority op at 2).  In Montgomery, for example, there was no indication that the plaintiff was instructed not to climb on an inverted bucket (4 NY3d at 806).  And in Robinson, there was no record evidence that the plaintiff was advised not to use a ladder that was plainly "too short for the work to be accomplished" (6 NY3d at 555). Yet those defendants were entitled to summary judgment because, in each case, the plaintiff's careless actions were the sole proximate cause of his injuries (see Robinson, 6

NY3d at 555; <u>Montgomery</u>, 4 NY3d at 806). Of course, owners and contractors could never anticipate the infinite ways in which a worker might recklessly evade safety protocols. The majority's contrary suggestion – that owners and contractors must expressly prohibit all conceivable forms of mischief – erects a new and impossible barrier that finds no support in our case law.

It is equally irrelevant that plaintiff was attempting the same unsafe "maneuver" as his coworker (majority op at 2). Reckless maneuvers are still reckless no matter how many times they are performed. Plaintiff cannot defeat summary judgment by simply pointing to a coworker who made the same misguided decision to disregard the various safety devices that defendants had provided.[1]

In any event, we can be assured that "plaintiff knew he was expected to use the safety devices provided to him" (majority op at 2) because *plaintiff himself said so*. During his deposition, plaintiff unambiguously admitted that he knew he "wasn't supposed to pass through" the window cutout. And candidly, plaintiff conceded that "it would have been much safer to just descend the stairs and go back the way [he] came." The result in this case should be straightforward: A plaintiff is not entitled to recover under Labor Law

---

[1] Even if widespread recklessness could justify plaintiff's conduct, there is no evidence that defendants "acquiesce[d]" to plaintiff's behavior such that it constituted an "accepted practice" (majority op at 3). To the contrary, the Assistant Superintendent at the worksite testified that, "[f]or safety reasons," workers were not permitted to use window cutouts to access the building. Had he seen workers "go through windows into the building from the scaffolding," the Assistant Superintendent would have "remove[d] them" from the worksite "right away" because they were "not permitted to do so." There was no evidence that a single worker ever passed through a window cutout in the presence of a manager, or that anyone ever reported that workers were using cutouts to access the building from the scaffolding.

§ 240 (1) "if adequate safety devices are available at the job site, but the worker either does not use them or misuses them" (Robinson, 6 NY3d at 554; see also Montgomery, 4 NY3d at 806).

The majority's holding boils down to a single proposition: plaintiff might not have known any better. That suggestion of incompetence is belied by the record, and dramatically underestimates plaintiff's capacity to understand basic safety concepts. "The point of Labor Law § 240 (1) is to compel contractors and owners to comply with the law, not to penalize them when they have done so" (Blake v Neighborhood Housing Services of New York City, 1 NY3d 280, 286 [2003]). The undisputed facts in this case lead to only one conclusion: defendants supplied adequate safety devices, plaintiff knew those devices were available, and plaintiff made the unwise decision not to use them. Plaintiff's negligence was, as a matter of law, the sole proximate cause of his injuries, and accordingly, defendants are entitled to summary judgment.

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

On review of submissions pursuant to section 500.11 of the Rules, order modified, without costs, by denying defendants' motion for summary judgment as to the Labor Law § 240 (1) cause of action and loss of consortium cause of action insofar as based upon that section and, as so modified, affirmed, in a memorandum. Judges Rivera, Fahey, Wilson and Feinman concur. Judge Garcia dissents in an opinion in which Chief Judge DiFiore and Judge Stein concur.

Decided February 18, 2020