Order, Supreme Court, New York County (Paul Wooten, J.), entered August 22, 2011, which, inter alia, granted the respective motions and cross motions of defendants and third-party defendants for summary judgment dismissing the complaint, and denied plaintiffs cross motion for partial summary judgment on the issue of liability on the claims under Labor Law §§ 240 (1) and 241 (6), unanimously affirmed, without costs.
This litigation arose from the death of a construction worker after he was injured at a construction site when a 14,000-pound boom lift,[1] which was being lifted off the roof by a crane, drifted out of position and pinned him against a wall.
The owner, defendant the Trustees of Columbia University in the City of New York (Columbia), hired defendant TDX Construction Corp. (TDX) as general contractor, which in turn hired defendant Koenig Iron Works, Inc. (Koenig) to supply structural steel. Koenig contracted with the decedent to install the steel, and he in turn hired workers from defendants Erin Erectors, Inc. and Erin Interiors, Inc. (together known as Erin). Erin was wholly owned by plaintiff, the decedent’s wife, who had no other construction experience and was barely involved in management of the companies; it was the decedent who supervised Erin’s workers and managed its operations. Although the only crane operator on the construction site was not an Erin employee, the decedent paid him to perform lifts on both June 14, 2002, and July 2, 2002; on both occasions he worked under the decedent’s direct supervision.
The decedent supervised the initial “pick,” or lift, of the boom lift to the roof on June 14, 2002, telling Erin employees how to rig the boom lift to the crane’s cables. On July 2, 2002, the date of the accident, the decedent told the boom lift driver where to position the boom lift to be removed from the roof and acted as *470 signal person, directing the crane operator via hand signals, though he did not personally direct the Erin employee who was rigging the boom lift to the crane.
The motion court resolved the competing motions and cross motions for summary judgment by determining, as a matter of law, that the decedent’s conduct was the sole proximate cause of the accident that led to his death. In its decision, the motion court identified a number of contributing causes of the accident, including the misrigging of the boom lift by an Erin employee, the failure to use tag lines to steady the load, and the use of hand signals rather than the “squawk box” speaker in the crane’s cab. The court credited each cause it addressed to the decedent’s decisions or to his supervision of Erin employees, and dismissed the complaint in its entirety because decedent “alone defined the task at hand, chose the methods and means to be used,” and made the decisions that led to the accident.
On this appeal, plaintiff asserts that the motion court did not address her claim that the lack of a licensed rigger was also a proximate cause of the accident, thereby defeating the “sole” proximate cause defense. More specifically, plaintiff contends that section 26-172 of the Administrative Code of the City of New York in effect at the time of the accident (now recodified at § 28-404.1) imposed a nondelegable duty on Columbia and TDX to hire a licensed rigger. That section made it unlawful to hoist or lower any article on the outside of a building unless the “work is performed by or under the supervision of a person licensed as a rigger.” The Rules of the City of New York Department of Buildings (1 RCNY) also provide that this licensed rigger “must be continuously on site during critical picks and must personally perform or personally supervise all critical picks” (1 RCNY 9-01 [e]). A “critical pick” includes a rigging operation involving a load that is asymmetrical or may present a problem because of clearance, drift, or other interference (1 RCNY 9-01 [b]). Even if a pick is not “critical,” the Rules provide that the licensed rigger must personally plan, and cannot delegate, the setup and operation of all rigging operations (1 RCNY 9-01 [d]).
Section 26-172 of the version of the Administrative Code in effect in 2002, however, was followed by an exemption in section 26-173: “The provisions of this article shall not apply ... to the hoisting or lowering of any building materials or equipment, other than boilers and tanks, in the course of the construction or alteration of any building or structure.” The accident occurred during the lowering of the boom lift, which was being used as equipment in the course of the construction of a build *471 ing, and therefore the circumstances surrounding the accident squarely fell under this exemption and no licensed rigger was expressly required by the Administrative Code.[2] Plaintiff s arguments to the contrary, based on witnesses’ opinions that a licensed rigger was necessary for this lift, are not persuasive in light of this clear statutory language.
For liability to attach, “the owner or contractor must breach the statutory duty under [Labor Law] section 240 (1) to provide a worker with adequate safety devices, and this breach must proximately cause the worker’s injuries” (Robinson v East Med. Ctr., LP, 6 NY3d 550, 554 [2006]; see Blake v Neighborhood Hous. Servs. of N.Y. City, 1 NY3d 280, 290 [2003]). Here, plaintiff has not come forward with sufficient evidence to raise an issue of fact as to whether defendants breached this duty to provide safety devices that proximately caused the accident. As plaintiff has failed to overcome defendants’ prima facie evidence that the decedent’s conduct and decisions were the sole proximate cause of the accident, plaintiff’s claims under common-law negligence and Labor Law §§ 200, 240 (1) and 241 (6) must all be dismissed.
In view of the foregoing, we need not reach the parties’ remaining contentions. Concur — Andrias, J.P., Moskowitz, Freedman, Manzanet-Daniels and Feinman, JJ.

. We use boom lift as a gender-neutral synonym for the terms manlift and man basket employed in the record.

. We note that this exemption in the current version of the Administrative Code is significantly narrower in scope, and may lead to a different result in future cases with similar facts: “The provisions of this article shall not apply ... to the loading or unloading of any building materials or equipment, other than boilers and tanks, from a delivery truck” (Administrative Code § 28-404.1 [emphasis added]).