Cutaia v Board of Mgrs. of the Varick St. Condominium (2019 NY Slip Op 03458)





Cutaia v Board of Mgrs. of the Varick St. Condominium


2019 NY Slip Op 03458


Decided on May 2, 2019


Appellate Division, First Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on May 2, 2019

Renwick, J.P., Manzanet-Daniels, Tom, Kahn, Gesmer, JJ.


155334/12 8623 160/170 8622

[*1]Michael Cutaia, Plaintiff-Appellant,
v
The Board of Managers of the Varick Street Condominium, et al., Defendants, The Rector, Church Wardens and Vestrymen of Trinity Church in the City of New York, et al., Defendants-Respondents.
Michilli Construction, Inc., et al., Third-Party Plaintiffs-Respondents,
v
A+ Installations Corp., Third-Party Defendant-Respondent. [And Other Actions]


Law Offices of Louis Grandelli, P.C., New York (Louis Grandelli of counsel), for appellant.
Law Office of James J. Toomey, New York (Michael J. Kozoriz of counsel), for The Rector, Church Wardens and Vestrymen of Trinity Church in the City of New York, Michilli Construction, Inc. and Michilli Inc., respondents.
O'Connor Reed Orlando LLP, Port Chester (Peter L. Urreta of counsel), for A+ Installations Corp., respondent.



Amended order, Supreme Court, New York County (Carol R. Edmead, J.), entered August 9, 2018, which, to the extent appealed from, denied plaintiff partial summary judgment on his Labor Law § 240(1) claim as against defendants The Rector, Church Wardens and Vestrymen of Trinity Church in the City of New York, Michilli Construction, Inc., and Michilli, Inc., reversed, on the law, without costs, and the motion granted. Appeal from order, same court and Justice, entered August 3, 2018, dismissed, without costs, as academic.
There is nothing in the statute that indicates that the Legislature intended to exempt from the protections of Labor Law § 240(1) a worker who falls from an unsecured ladder after receiving an electric shock. Indeed, our directive is to construe the statute "as liberally as may be for the accomplishment of the purpose for which it was thus framed" (Zimmer v Chemung County Performing Arts, 65 NY2d 513, 521 [1985]).
The purpose of section 240(1) is to protect the worker from worksite injuries attributable to gravity-related risks. "It is sufficient for purposes of liability under section 240(1) that adequate safety devices to prevent the ladder from slipping or to protect plaintiff from falling were absent" (Orellano v 29 E. 37th St. Realty Corp., 292 AD2d 289, 291 [1st Dept 2002]).
The "safety device" provided to plaintiff was an unsecured and unsupported A-frame [*2]ladder that was inadequate to perform the assigned task. The ladder could not be opened or locked while plaintiff was performing his task, and the only way plaintiff could gain access to his work area on the ceiling at the end of the room was by folding up the ladder and leaning it against the wall. It is undisputed that the ladder was not anchored to the floor or wall. There were no other safety devices provided to plaintiff. Plaintiff's expert opined that had the ladder been supported or secured to the floor or wall by anchoring, it would have remained stable when plaintiff was shocked. He further opined that given the nature of plaintiff's work, which involved cutting pipes and the use of hand tools at an elevated height, plaintiff should have been furnished with a more stable device such as a Baker scaffold or a man lift. It is well settled that the failure to properly secure a ladder and to ensure that it remain steady and erect is precisely the foreseeable elevation-related risk against which section 240(1) was designed to protect (see Plywacz v 85 Broad St. LLC, 159 AD3d 543 [1st Dept 2018]; Montalvo v J. Petrocelli Constr., Inc., 8 AD3d 173 [1st Dept 2004]).
The fact that the fall was precipitated by an electric shock does not change this fact. This case is distinguishable from Nazario v 222 Broadway, LLC (28 NY3d 1054 [2016]), relied on by the dissent. The plaintiff in Nazario fell while "holding the ladder, which remained in an open locked position when it landed" (135 AD3d 506, 507 [1st Dept 2016]). Thus, there was no evidence that the ladder was defective or that another safety device was needed. Here, on the other hand, it is undisputed that the ladder provided was not fully open and locked, nor was it otherwise secured, as plaintiff's expert opined it ought to have been.
The Court of Appeals in Nazario never suggested that all elevated falls following electrical shocks were carved out of the protections of the statute (see Faver v Midtown Trackage Ventures, LLC, 150 AD3d 580 [1st Dept 2017]; DelRosario v United Nations Fed. Credit Union, 104 AD3d 515 [1st Dept 2013] [plaintiff entitled to partial summary judgment where ladder wobbled and moved after he came into contact with a live wire, causing him to fall]; Vukovich v 1345 Fee, LLC, 61 AD3d 533 [1st Dept 2009] [plaintiff entitled to partial summary judgment where unsecured ladder inadequate to prevent him from falling to the floor after being shocked]).
Plaintiff suffered not only electrical burns but injuries to his spine and shoulders that necessitated multiple surgeries and are clearly attributable to the fall, and not to the shock, presenting questions of fact as to damages, but not liability (see O'Leary v S & A Elec. Contr. Corp. (149 AD3d 500, 502 [1st Dept 2017]).
Defendants do not challenge the court's finding that plaintiff is entitled to partial summary judgment on his Section 241(6) claim based on evidence that defendants violated Industrial Code provisions requiring an employer to, inter alia, inspect electrical sources, undertake measures and provide appropriate protective wear to insulate workers against live electrical sources, and post proper warning signs of nearby electrical hazards (see 12 NYCRR 23-1.13[b][3], [4]). Whether plaintiff was at all at fault for the accident must await the trial on damages (see Rodriguez v City of New York, 31 NY3d 312 [2018]).
All concur except Tom and Kahn, JJ. who dissent in a memorandum by Tom, J. as follows:




TOM, J. (dissenting)


Plaintiff seeks summary judgment pursuant to Labor Law § 240(1) on the basis that while working on a ladder propped against a wall he fell when his hand came into contact with a live wire, the shock from which jolted him and knocked him off the ladder. However, in the absence of any evidence that the ladder was defective or that other particular safety devices would have prevented the accident, I conclude that summary judgment in favor of plaintiff is precluded under the authority of Nazario v 222 Broadway, LLC (28 NY3d 1054 [2016]), which applies to the facts of the present case.
At the time of the accident, plaintiff, a plumbing mechanic, had been employed by third-party defendant A+ Installations Corp. to install plumbing piping in premises leased by third-party plaintiff Michilli, Inc., for a renovation project for which Michilli acted as its own general contractor. Plaintiff, directed to relocate some piping in the 12-foot-high ceiling of a bathroom by Michilli's project manager, Joseph Renna, used a 10-foot rubber-footed A-frame ladder to [*3]accomplish the work. On two prior occasions during this phase of the project, plaintiff accessed the ceiling area by opening the ladder and ascending and descending the ladder several times with no incident. He had previously observed electrical BX cable as well as yellow wires near the copper pipes that he was cutting. For his third use, he concluded that the ladder would not open completely in the particular location where he had to work. As a result, he folded the ladder, leaned it against the wall with the feet positioned about two feet from the bottom of the wall on an even cement surface, and he climbed to an upper rung to continue his pipe-cutting. Plaintiff testified that under similar circumstances in the past he would solicit the help of someone to hold the ladder while he worked on it, but on this occasion, determining that the ladder was "sturdy up against the wall," he declined to seek the assistance of his nearby coworker. Notably, the ladder did not slip.
Upon inspecting, plaintiff did not observe any wires or electrical cables near the piping. Plaintiff testified that the ladder remained steady as he cut the piping over the course of several minutes. However, when he grabbed onto piping as he maneuvered a pipe joint into place, plaintiff received an electric shock that knocked him off of the ladder. Thus, it can be concluded from plaintiff's own testimony that he was propelled from where he had been located on the ladder by the force of the electrical charge rather than by the force of gravity, which was not a result of any defect in the ladder. Renna's post-accident inspection of the location revealed that a cap was missing from the end of a yellow electrical line, used only for temporary power and lighting, which was hanging about one foot beneath the piping on which plaintiff had been working.
Evidence of a fall from a ladder alone is not proof that the ladder was defective or inadequate and as such a proximate cause of the fall. A claim under section 240(1) still requires proof that an injurious fall from a height, even when induced by an electrical shock, was proximately caused by the inadequacy of the safety devices provided. Here, there was no credible proof that the A-frame ladder was defective or an inadequate device for the plumbing work that plaintiff was performing. Addressing a contractor's fall from a rubber-footed ladder described by the plaintiff as steady and in proper working condition in Blake v Neighborhood Hous. Servs. of N.Y. City (1 NY3d 280 [2003]), the Court of Appeals, in recounting the legislative history and purposes of the current Labor Law § 240(1) and judicial embellishments on the statutory text, emphasized that the fall from a ladder or scaffold does not itself support strict liability. Rather, strict liability is defeated in the absence of a violation of section 240(1). As stated elsewhere, if the safety device is sound and in place, the statutory language "must not be strained" in support of a strict liability standard that is not legislatively required (Martinez v City of New York, 93 NY2d 322, 326 [1999][internal quotation marks omitted]). When an electrical shock causes a worker to fall from an A-frame ladder in the absence of evidence that the ladder was defective or that another safety device was required, factual issues pertaining to causation and liability are presented for trial, precluding strict liability favoring the plaintiff. This was the outcome in Nazario v 222 Broadway, LLC (28 NY3d 1054 [2016], supra), as has been reflected more recently in Jones v Nazareth Coll. of Rochester (147 AD3d 1364 [4th Dept 2017]) and previously in the case law of other judicial departments (Weber v 1111 Park Ave. Realty Corp., 253 AD2d 376 [1st Dept 1998]; Gange v Tilles Inv. Co., 220 AD2d 556 [2d Dept 1995]; Grogan v Norlite Corp., 282 AD2d 781 [3rd Dept 2001]). Our prior rulings in DelRosario v United Nations Fed. Credit Union (104 AD3d 515 [1st Dept 2013]) and Vukovich v 1345 Fee, LLC (61 AD3d 533 [1st Dept 2009]) necessarily must yield to Nazario to the extent they are inconsistent with it.
Plaintiff has the burden of establishing a prima facie violation of the statute in the first instance. His evidence included an expert opinion by his engineer, Fuchs, who opined that the closed A-frame ladder was inadequate and that other safety devices such as a scaffold, a manlift, ladder anchors, a lanyard, or a harness could have been provided to afford plaintiff proper protection for the elevated plumbing work he was undertaking near electrical sources. However, Fuchs did not demonstrate from the facts in the record how the suggested alternative safety devices could have been employed to prevent what plaintiff describes as an "electrocution," the factor that the record strongly suggests caused his fall, or how these devices would have [*4]protected him under these circumstances.
Since plaintiff cannot show that the ladder was defective, his strategy was to seek strict liability on the basis that, he argues, an A-frame ladder was, in effect, the wrong safety device for the location, in that the area was too confined for its full expansion. Plaintiff testified at his deposition:
"I picked up the ladder. Originally, I tried to — I opened the ladder and I was trying to position it where I could get to the pipe that I was working on but I couldn't. So I had to fold the ladder and lean it up against the wall and that's what I did."
There are three major flaws in plaintiff's theory in support of summary judgment. First, plaintiff's expert, Fuchs, did not elaborate on how a scaffold or manlift could have even fit into such a confined space and thus could have even been used for the assigned plumbing task. Rather, the record suggests that if an A-frame ladder could not be opened in the subject location, assembling a scaffold would have been precluded, as would the use of a manlift under similar dimensional factors. As a result, on the basis of this record we are left to speculate as to the feasibility of alternative safety devices, presenting an unresolved factual issue. Second, to the extent Fuchs opined that the closed A-frame ladder should have been anchored or otherwise secured to keep it from tipping or shifting, witnesses testified that the ladder was "sturdy" and "stable." Plaintiff himself, who had set up the ladder, even found it to be stable with no movement. The record is bereft of evidence plausibly explaining why plaintiff fell, apart from his having been shocked and having momentarily lost consciousness as a direct result of the electrical shock. Hence, the record does not allow us to conclude as a matter of law that the ladder somehow slipped. Third, plaintiff's evidence failed to explain how the proposed alternative safety devices could have prevented the fall of a worker who apparently had come into contact with a live wire or his consequential injuries. To the contrary, assigning proximate causation as a matter of law to the essentially unexplained inadequacy of the safety device dodges the more relevant, and I suggest the glaringly obvious, causative explanation provided by the electrical shock. Electrical jolts have been known to thrust a person across a distance, opened ladder or not. As such, notwithstanding Fuchs's conclusory opinion that other safety devices could have protected plaintiff from his fall under the circumstances of this case, there is no evidence, speculation excepted, that the alleged inadequacy of the A-frame ladder used by plaintiff was a proximate cause of his fall.
Finally, contrary to the characterization of the majority, I am not suggesting that Nazario has carved out from the protection of section 240 all elevated falls following electrical shocks. To the contrary, by imposing strict liability because a worker fell from a non-defective ladder after suffering a shock, the logic of the majority's position would seem to, itself, create a special category of injury that circumvents a plaintiff's responsibility in the first instance of establishing a prima facie case of causation.
For these reasons I conclude that the record does not support a finding as a matter of law that Labor Law § 240(1) was violated.
Accordingly, I would affirm, and deny plaintiff partial summary judgment on his Labor Law § 240(1) claim.
THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: MAY 2, 2019
CLERK