# State of New York Court of Appeals

MEMORANDUM

This memorandum is uncorrected and subject to revision before publication in the New York Reports.

No. 25
Michael Cutaia,
    Respondent,
     v.
The Board of Managers of the
160/170 Varick Street
Condominium, et al.,
    Defendants,
The Rector, Church Wardens and
Vestrymen of Trinity Church in
the City of New York, et al.,
    Appellants.
----------------------------
Michilli Construction, Inc. et
al.,
   Third-Party Appellants,
     v.
A+ Installations Corp.,
   Third-Party Defendant.
(And Other Actions.)


Michael J. Kozoriz, for appellants and third-party appellants.
Louis Grandelli, for respondent.


MEMORANDUM:


The order of the Appellate Division should be reversed, with costs, plaintiff's

motion for partial summary judgment on his Labor Law § 240 (1) claim denied, and the

certified question answered in the negative.

- 1 -

While working on a building renovation project, plaintiff was tasked with moving sinks from one area of a bathroom to another. The work required plaintiff to cut and reroute pipes in the ceiling that were located near electrical wiring. To reach the pipes, plaintiff used an A-frame ladder; however, because of spatial limitations, he had to lean the ladder against the wall in the closed and unlocked position. While standing on the ladder and attempting to connect two pipes, plaintiff received an electric shock and fell to the ground. As a result of the accident, plaintiff suffered electrical burns to his left hand and the left side of his torso from his chest to his hip, as well as injuries to his spine and shoulders. Plaintiff does not remember anything about his fall, including whether he lost consciousness, whether the ladder fell to the ground, or whether he was thrown from the ladder after being electrocuted.

An "accident alone" is insufficient to establish a violation of Labor Law § 240 (1) or causation (*Blake v Neighborhood Hous. Servs. of N.Y. City*, 1 NY3d 280, 289 [2003]; *see Barreto v Metropolitan Transp. Auth.*, 25 NY3d 426, 433 [2015]). Moreover, Labor Law § 240 (1) is designed to protect against "*harm directly flowing from the application of the force of gravity to an object or person*" (*Ross v Curtis-Palmer Hydro-Elec. Co.*, 81 NY2d 494, 501 [1993] [emphasis in original]). We agree with the dissent below that plaintiff was not entitled to partial summary judgment on his Labor Law § 240 (1) claim (*see Cutaia v Board of Mgrs. of the Varick St. Condominium*, 172 AD3d 424, 426-429 [1st Dept 2019, Tom, J., dissenting]). Indeed, questions of fact exist as to whether "the ladder failed to provide proper protection," whether "plaintiff should have been provided with additional safety devices," and whether the ladder's purported inadequacy or the absence

of additional safety devices was a proximate cause of plaintiff's accident (*Nazario v 222 Broadway, LLC*, 28 NY3d 1054, 1055 [2016]; *see Ortiz v Varsity Holdings, LLC*, 18 NY3d 335, 340 [2011] ["to prevail on summary judgment, plaintiff must establish that there is a safety device of the kind enumerated in section 240 (1) that could have prevented his fall"]; *see e.g. Jones v Nazareth Coll. of Rochester*, 147 AD3d 1364, 1365 [4th Dept 2017] [holding that plaintiff, who received an electric shock while standing on an A-frame ladder that was "folded shut and leaning against the wall," was not entitled to summary judgment on his Labor Law § 240 (1) claim because questions of fact remained]).  The conclusory expert affidavit did not meet plaintiff's burden of establishing proximate cause as a matter of law (*see Cutaia*, 172 AD3d at 428-429 [Tom, J., dissenting]; *see generally JMD Holding Corp. v Congress Fin. Corp.*, 4 NY3d 373, 384-385 [2005]).

WILSON, J. (dissenting):

Michael Cutaia was a plumber. His employer directed him to reroute pipes located above a drop ceiling that contained both pipes and electrical wiring. Mr. Cutaia was provided an A-frame ladder for the work. He needed to cut and reroute a pipe in the ceiling,

- 1 -

but he could not reach the location with the ladder opened and locked. To access the pipes, Mr. Cutaia had to close the ladder and lean it against a wall. When he climbed the closed ladder and reached for a pipe, he was shocked by an exposed electrical wire and fell to the ground. He sustained serious burns from the electrocution and substantial spinal and shoulder injuries from the fall.

Mr. Cutaia sued under two different provisions of the Labor Law: Labor Law § 241 (6) and Labor Law § 240 (1). As to the former (which concerns risks related to construction, excavation or demolition), Supreme Court held, and the defendants do not contest, that Mr. Cutaia is entitled to partial summary judgment on liability, due to the defendants' failure to properly inspect electrical sources and follow certain rules about warning and protecting against those sources. As to Labor Law § 240 (1) (which concerns elevation-related risks), the Appellate Division held that Mr. Cutaia also established that he is entitled to partial summary judgment on liability. Only that claim is at issue on this appeal.

The majority holds that Mr. Cutaia is not entitled to partial summary judgment on his Labor Law § 240 (1) claim. I disagree and would affirm the Appellate Division's order. Mr. Cutaia's case is a prototypical example of the situations the legislature sought to remedy through Labor Law § 240 (1): he was provided an inadequate ladder for his job, and that inadequate ladder was a proximate cause of his fall-related injuries. Mr. Cutaia need demonstrate nothing else to obtain partial summary judgment under Labor Law § 240 (1); the inquiry stops there.

**I**

Michael Cutaia was employed as a plumbing mechanic by A+ Installations. On March 26, 2012, he reported to the offices of Michilli Construction Inc., located at 160 Varick Street in Manhattan, in a building owned by Trinity Church. A+ Installations was performing the plumbing work for Michilli's office renovation. Mr. Cutaia had already installed pipes in the office's bathroom, and he was next instructed to move the sinks to a different location. To do so, he had to shut down the water lines, drain them, cut the old water lines, and reroute the water and drain lines to the new location.

Mr. Cutaia was rerouting the water lines when the accident occurred. The pipes were located in the ceiling, approximately 10 feet above the ground. To access the pipes, Mr. Cutaia used an A-frame ladder that was onsite and that he had used every day he worked at the site. Earlier that day, Mr. Cutaia had used the ladder in its open, locked position. However, with the ladder in its open and locked position, he was unable to reach the pipes he needed to cut. Mr. Cutaia had not been provided any other equipment that would allow him to reach the area he needed to access. He was able to reach the pipes only by folding the ladder and leaning it against the wall. He did so, positioning the top of the folded ladder between eight and nine feet up the wall, approximately a foot below the framing of the ceiling. The base of the ladder was positioned approximately two feet away from the wall. Mr. Cutaia climbed the ladder, cut a pipe, and cleaned it. He next attempted to connect the two ends of the pipe he had cut with a "T" piece. When he grabbed one end of the pipe, however, he was electrocuted and fell to the ground.

Joe Renna, a project manager for Michilli, heard Mr. Cutaia's screams and ran to assist him. Mr. Renna testified that the ladder he saw lying folded and flat on the floor was the ladder from which Mr. Cutaia fell. Mr. Renna also testified that the ladder was closed, and it appeared that it had been leaning against the wall.

Mr. Cutaia was severely injured. He was burned on his left hand and the left side of his chest down to his hip, causing some scarring. He also suffered herniated discs in his neck, bulging discs in his lower back, and a torn labrum in his shoulder, resulting in chronic pain in his shoulder, neck, and lower back and numbness in his hands and feet. He has subsequently had three shoulder surgeries and a superior cervical fusion and discectomy in his neck.

Mr. Cutaia sued to recover for his injuries. He alleged violations of Labor Law § 240 (1), which requires contractors and owners to provide adequate safety devices to persons engaged in elevation-related work, and Labor Law § 241 (6), which requires areas of construction work to be arranged and conducted in a way that provides reasonable and adequate worksite protections.[1] Following discovery, Mr. Cutaia moved for partial summary judgment on his Labor Law § 240 (1) and § 241 (6) claims. Supreme Court granted partial summary judgment on the Labor Law § 241 (6) claim based on violations of provisions of the Industrial Code that require preventative measures to protect workers from electric shocks. The court held that Mr. Cutaia was not entitled to partial summary

---

[1] In addition to his Labor Law §§ 240 (1) and 241 (6) claims, Mr. Cutaia alleged violations of Labor Law § 200, which details a general duty to protect the health and safety of employees, and pleaded a common law negligence claim.

judgment on his Labor Law § 240 (1) claim because he had failed to make a *prima facie* showing that his injuries were proximately caused by the inadequate ladder rather than the electric shock.

The Appellate Division reversed in part Supreme Court's decision and held that Mr. Cutaia was entitled to partial summary judgment on his Labor Law § 240 (1) claim (172 AD3d 424, 425 [1st Dept 2019]). The Appellate Division did not disturb Supreme Court's grant of partial summary judgment in favor of Mr. Cutaia's Labor Law § 241 (6) claim because defendants did not challenge that determination on appeal. The question on appeal to this Court is whether the Appellate Division was correct that Mr. Cutaia was entitled to partial summary judgment on his Labor Law § 240 (1) claim. Given the clear scope of Labor Law § 240 (1) reflected in the statute as well as the cases interpreting it, the Appellate Division was correct—Mr. Cutaia is entitled to summary judgment on liability for his Labor Law § 240 (1) claim.

## II

Labor Law § 240 (1) provides important and clear protections to people employed in various kinds of work for dwellings and buildings, including construction, repair work, and demolition. The statute provides that:

> "All contractors and owners and their agents, except owners of one and two-family dwellings who contract for but do not direct or control the work, in the erection, demolition, repairing, altering, painting, cleaning or pointing of a building or structure shall furnish or erect, or cause to be furnished or erected for the performance of such labor, scaffolding, hoists, stays, ladders, slings, hangers, blocks, pulleys, braces, irons, ropes, and other devices which

shall be so constructed, placed and operated as to give proper protection to a person so employed."

Labor Law § 240 (1) thus "imposes upon owners, contractors and their agents a nondelegable duty that renders them liable regardless of whether they supervise or control the work" (*Barreto v Metropolitan Transp. Auth.*, 25 NY3d 426, 433 [2015]). A violation of the statute gives rise to absolute liability (*Zimmer v Chemung County Performing Arts*, 65 NY2d 513, 522 [1985]). Through Labor Law § 240 (1), the legislature intended "to achieve the purpose of protecting workers by placing 'ultimate responsibility for safety practices at building construction jobs where such responsibility actually belongs, on the owner and general contractor,' instead of on workers, who 'are scarcely in a position to protect themselves from accident'" (*id.* at 520, quoting *Koenig v Patrick Constr. Corp.*, 298 NY 313, 318 [1948]). The statute "undoubtedly is to be construed as liberally as may be for the accomplishment of the purpose for which it was thus framed" (*Quigley v Thatcher*, 207 NY 66, 68 [1912]). To prevail on a Labor Law § 240 (1) claim, a plaintiff must establish that the statute was violated and that the violation was a proximate cause of the injury (*Barreto*, 25 NY3d at 433).

Applying our decisional law to Mr. Cutaia's case, he has established both elements. The majority states that "[q]uestions of fact exist as to whether the ladder failed to provide proper protection, and whether plaintiff should have been provided with additional safety devices" (majority op at 2, quoting *Nazario v 222 Broadway, LLC*, 28 NY3d 1054, 1055 [2016]). Contrary to the majority's assertion, no such questions of fact remain. The uncontroverted evidence established that Mr. Cutaia was given an A-frame ladder—a type

of ladder that must be fully opened and locked to be used safely—and could only use that ladder in an unsafe manner (folded and leaned against a wall) to perform the work he was assigned. When Mr. Cutaia used the ladder, he fell and was injured by the fall. Mr. Cutaia's expert stated that if the ladder had been anchored to the floor or the wall, it would have remained stable when Mr. Cutaia was shocked. That expert also opined that Mr. Cutaia should have been provided a more stable device altogether.

The electric shock is a red herring. Although the shock precipitated Mr. Cutaia's fall, the inadequate ladder remains a proximate cause of his fall-related injuries. Indeed, "[t]here may be more than one proximate cause of an accident" (*Sweet v Perkins*, 196 NY 482, 485 [1909]), and the fact that a worker was shocked does not negate liability for the defendant's failure to furnish the protection required by statute (*Pardo v Bialystoker Ctr. & Bikur Cholim*, 308 AD2d 384, 385 [1st Dept 2003]; *Nahmias v Concourse 163rd St. Corp*, 41 AD2d 719, 719 [1st Dept 1973] ["If two conditions combine to cause an accident, for one of which the defendant is responsible, there is liability even though the other cause may have been a contributing factor"]; *see also Joyce v Rumsey Realty Corp.*, 17 NY2d 118, 122-123 [1966] [ "That plaintiff was caused to fall by the breaking of a plank is beside the point" because "[s]omething must project him into the hole but that something cannot be more than a concurrent cause of the injury. . . . To say that a jury in such a case could bring in a no cause verdict would be to say that the jury can nullify the statute."]). Thus, even though the electric shock was the precipitating event (and a proximate cause) of Mr. Cutaia's fall, it was not the sole proximate cause. The inadequate ladder that failed to secure Mr. Cutaia for his work—which involved working overhead on pipes in a ceiling near

wiring, posing a clear and foreseeable risk of shock—was also a proximate cause of his fall-related injuries.

Nor was the electric shock an independent intervening act that became a superseding cause of Mr. Cutaia's injuries that removed the inadequate ladder as a proximate cause. In *Gordon v Eastern Railway Supply, Inc.*, we explained that "[a]n independent intervening act may constitute a superseding cause, and be sufficient to relieve a defendant of liability, if it is of such an extraordinary nature or so attenuated from the defendants' conduct that responsibility for the injury should not reasonably be attributed to them" (82 NY2d 555 [1993]). In *Gordon*, a railcar services employee was injured while cleaning a railroad car with a hand-held sandblaster (*id.* at 558). His injury occurred while he was using the sandblaster and fell off a ladder that was leaning against the side of a railroad car (*id.*). Although the defendants in *Gordon* "maintain[ed] that plaintiff's injury was caused by a defective sandblaster, not their failure to provide him with a sufficiently safe scaffold or ladder[,]" we held that "defendants' failure to provide plaintiff with a safe scaffold or ladder while he sandblasted the railroad car was a substantial cause leading to his fall and the injuries he sustained" (*id.* at 562). We so held because "[i]njury was a foreseeable result of cleaning railroad cars from an elevated position, and a fall and injury occasioned by an allegedly defective sandblaster used in the process is not of such an 'extraordinary nature' that defendants' responsibility for the injury should be severed" (*id.*).

Mr. Cutaia's case is even stronger than that of the plaintiff in *Gordon*. Like the plaintiff in *Gordon*, Mr. Cutaia fell from a ladder that was leaned up against the side of something and that failed to adequately secure him from a foreseeable elevation risk. Like

the allegedly defective sandblaster in *Gordon*, the electric shock in Mr. Cutaia's accident

precipitated the fall that caused his injuries. The plaintiff's injuries in *Gordon*, however,

were not principally caused by the fall, but by the defective sandblaster's failure to stop

when the trigger was released. The resulting injuries were caused by the plaintiff being

sandblasted. Nevertheless, we held that the ladder was a sufficient cause of the plaintiff's

injury, which was principally caused by being sprayed by the sandblaster after he had

fallen. In contrast, Mr. Cutaia's orthopedic injuries were caused by the fall—the very

elevation risk at which Labor Law § 240 (1) is directly aimed. *A fortiori*, the electric shock

proximately caused Mr. Cutaia's fall-related injuries. The electric shock—just like the

sandblaster in *Gordon*—did not supersede or displace the inadequate ladder as a proximate

cause of Mr. Cutaia's fall-related injuries.[2]

---

[2] *Ortiz v Varsity Holdings, LLC* (18 NY3d 335, 340 [2011]) does not support the majority's position. There, we affirmed the denial of summary judgment for Mr. Ortiz because a triable issue of fact existed as to whether it was necessary for him to stand on the top of a dumpster's narrow and slippery wall to rearrange the debris in the dumpster (*id.* at 339-340). Alongside that holding, we also stated that "to prevail on summary judgment, plaintiff must establish that there is a safety device of the kind enumerated in section 240 (1) that could have prevented his fall, because 'liability is contingent upon . . . the failure to use, or the inadequacy of' such a device" (*id.* at 340, quoting *Narducci v Manhasset Bay Assoc.*, 96 NY2d 259, 266 [2001]). It is important not to misread that statement as a requirement that the plaintiff must elucidate a specific, existing safety device that would have prevented his injuries from a fall. Instead, the statement reflects that a plaintiff must prove that the *absence of* a safety device of the kind envisioned by Labor Law § 240 (1) proximately caused the injury. *Narducci*, quoted by the *Ortiz* court, involves a different type of Labor Law § 240 (1) claim—where a plaintiff seeks to recover for injuries caused by a falling object, not from the plaintiff's own fall—and underscores that the central inquiry is whether the absence of a safety device caused the injuries. In *Narducci*, we held that the plaintiff was not entitled to relief under Labor Law § 240 (1) because, for "falling object" cases, "[a] plaintiff must show that the object fell, while being hoisted or secured, *because of* the absence or inadequacy of a safety device of the kind enumerated in the statute" (*id.* at 268 [emphasis in original]). Indeed, if no adequate safety device has yet

### III

*Nazario v 222 Broadway LLC*, on which the majority relies, differs substantially from this case (majority op at 2-3, citing 28 NY3d 1054 [2016]). The plaintiff in *Nazario* was performing electrical work. He used a wooden A-frame ladder, which was in an open and locked position, and was reaching upward when an exposed wire shocked him (135 AD3d 506, 507 [1st Dept 2016]). The plaintiff fell while holding the ladder (*id.*). We held that "[q]uestions of fact exist as to whether the ladder failed to provide proper protection, and whether plaintiff should have been provided with additional safety devices" (28 NY3d at 1055).

Mr. Cutaia's case differs in two important ways. First, the plaintiff in *Nazario* had been furnished a ladder that could be—and was in fact—used in the manner intended: the plaintiff was using the A-frame ladder as designed, opened and with the locking mechanism engaged. He fell, gripping the ladder, which remained in its open and locked position (*id*). Mr. Cutaia, in contrast, was provided a ladder that could not be used in a safe manner to perform his work; to access a pipe he needed to cut, he had to use the ladder in a way widely known to be unsafe (*see, e.g.,* U.S. Dept. of Labor, OSHA Fact Sheet, "Reducing Falls in Construction: Safe Use of Stepladders" ["Safe Stepladder Use—DO

---

been designed for a particular task but a plaintiff was injured while completing that task, the defendant remains strictly liable. As we noted in *Zimmer*, "[i]f the state of the building . . . is such that no devices have yet been devised to protect workers operating at such heights in dangerous work, it is illogical to conclude, given the purpose of the statute, that the responsibility of owners and contractors is then negated" (65 NY2d at 524, quoting 102 AD2d 922, 955 [3d Dept 1984] [Mikoll, J., dissenting]).

NOT: • Use ladders for a purpose other than that for which they were designed. For example, do not use a folded stepladder as a single ladder"]; American National Standards Institute, "Ladder Safety Tips: Stepladders," available at https://blog.ansi.org/ali/stepladder-safety-tips-ali-ladders/#gref ["To set up a stepladder for safe use, make sure the spreader is locked in a fully open position. Never use a stepladder with the spreader in a closed or partially closed position. Stepladders are meant to be used this way every time, and not in the closed position against a wall]). Even the defendants admit that the ladder here was an inadequate safety device for the assigned task, because it could not be used as designed for that task (s*ee Felker v Corning Inc.*, 90 NY2d 219, 224 [1997] [reasoning that a ladder—though sufficient to address the risk of working at a height above an alcove wall—was insufficient to address the risk created by the need to reach over the wall to paint in an elevated, open area, for which there was a "complete failure to provide any safety device"]).

Second, the plaintiff in *Nazario* tendered no expert testimony or other evidence that the ladder he was provided was inadequate or that another safety device would have prevented his fall. Because the plaintiff in *Nazario* was given a ladder suitable for the job and offered no evidence that some other device would have better protected him, we held that a triable issue of fact existed. Here, in contrast, Mr. Cutaia submitted an expert affidavit averring that the failure to provide an adequate ladder or other safety devices was a proximate cause of his injury:

> "Considering the nature of the work assigned to Cutaia . . . [he] should have been furnished with a more stable device equipped with a platform and rails, such as a baker scaffold or man lift. Had Cutaia been provided with a

> scaffold, or other appropriate device for his work, he would have been protected from falling to the ground when he received an electric shock. . . . Further, the A-frame ladder Cutaia was using was not anchored, tied down, or otherwise adequately secured to the floor or wall, and there were no other safety devices provided such as a harness or safety belt to prevent Cutaia from falling to the floor. Had the ladder been supported or secured to the floor or wall by anchoring, the ladder would have remained stable when Cutaia was shocked, and he could have been prevented from falling to the floor. Moreover, had other safety devices been provided such as a harness or safety belt, the device would have prevented him from falling to the floor."

The defendants tendered no contrary expert opinion or other proof to controvert Mr. Cutaia's expert (*see Klein v City of New York*, 89 NY2d 833, 835 [1996] [affirming grant of summary judgment where plaintiff established a *prima facie* case of a Labor Law § 240 (1) violation and "neither the defendant nor third-party defendant presented any evidence of a triable issue of fact relating to the *prima facie* case or to plaintiff's credibility"]). Indeed, during oral argument, counsel for defendants agreed that Mr. Cutaia bore no burden to show that some other safety device would have better protected him.

Despite that concession, defendants' brief posits that the testimony by Mr. Cutaia's expert is speculative because he did not describe the dimensions of the space or visit the accident location. For the purpose of summary judgment, the affidavit is sufficient to show that the absence of an adequate safety device was a proximate cause of Mr. Cutaia's accident (*see Barreto*, 25 NY3d at 433 ["On his motion for summary judgment, plaintiff met his burden of establishing the absence of an adequate safety device through the submission of [ ] deposition testimony of IMS's president . . . , who testified that there should have been a guardrail system around three sides of the open manhole while the containment enclosure was being dismantled. Plaintiff also established that the absence of

guardrails was a proximate cause of the accident because had they been in place he would

not have fallen"]).

Those two differences between *Nazario* and Mr. Cutaia's case underscore why—

unlike the plaintiff in *Nazario*—Mr. Cutaia is entitled to partial summary judgment on his

Labor Law § 240 (1) claim.

Order reversed, with costs, plaintiff's motion for partial summary judgment on his Labor Law § 240 (1) claim denied and certified question answered in the negative, in a memorandum. Chief Judge DiFiore and Judges Garcia, Singas and Cannataro concur. Judge Wilson dissents in an opinion, in which Judges Rivera and Troutman concur.

Decided April 28, 2022